## THAMES SHIPYARD AND REPAIR COMPANY *v.* EARL E. WILLAMETZ

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 20066
NEW LONDON

Memorandum filed December 13, 1978

*Gruskin & Gruskin,* for the plaintiff.

*Raphael Korff,* for the defendant.

HALE, J.  The defendant had seen a wooden forty-six foot yawl founder on rocks at Madison, in the latter part of September, 1973.  He contacted the owner who had given it up for lost and purchased the vessel on September 24, 1973, for $500.

### I

### FACTS

The defendant had the boat checked by an expert in wooden ship repairs who is also a skindiver.  This man, Mr. Gronback, dove and swam around the vessel and examined it carefully.  He testified that the yacht was resting on its starboard (right) side which was impaled on a rock.  The hole through the hull was about midship.  The keel was caught under another rock. The vessel was pointing about south southwest with its two masts extended toward shore at an angle of less than forty-five degrees.

The boat was thus held in a relatively stable condition. The weather was very calm and remained so until October 25, a Friday.

The defendant had devised a plan to raise the boat by means of sinking and floating tanks to be attached under the masts and over the keel. He had posted a "keep off" sign on the vessel but within a period of about two hours during which he left the boat to move his equipment from where he had it stored he discovered that someone had sawed the masts off. This thwarted his plans and he had to seek a more standard approach to raising the vessel.

He sought the services of at least two salvagers but neither had heavy enough equipment to raise the boat. The defendant then contacted the plaintiff company which had the necessary equipment and expertise.

The plaintiff sent its foreman to examine the wreck and also examined the charts as to the location of the wreck, depth of the water, location of rocks, etc., and, after negotiations, agreed to raise the boat the next day, October 3, transport it to New London and deliver it to the defendant. Mr. Willametz and two helpers arrived at the plaintiff's place of business at the appointed time but the plaintiff's tug was not ready to do the job. The job was delayed three days due to the failure of the plaintiff to prepare its equipment.

Throughout the period the sea was calm. On October 5, however, a storm came up and the yacht was pounded on the rocks for many hours and much more extensively damaged.

The plaintiff got its equipment underway on October 6 and raised the remains of the yacht with little trouble. The boat was then placed upon a lighter and towed to New London where it was placed aboard a flat-bed trailer hired by the defendant on which it was

hauled to the defendant's place of business where it now rests in a yard. The remains are described as about half a hull.

## II

### PLAINTIFF'S CLAIM

The plaintiff claimed that it entered into an oral contract with the defendant based upon time and equipment.

The burden was upon the plaintiff to prove its case by a fair preponderance of the evidence. It failed to carry this burden. Its principal witness was the defendant himself who testified to an oral contract to raise a sunken sailing yacht for an agreed-upon price of $1050. Its next witness, the shipyard superintendent, knew nothing about the actual negotiations. The plaintiff's president and negotiator of the contract exhibited a convenient memory which although strong on information about the usual method of charging for such a contract as that alleged, could recall very little about the actual negotiations and failed to refute the testimony of the defendant. While unable to recall much about the actual contract and the negotiations in which he was a principal, he could, interestingly enough, recall distinctly that his superintendent reported that a sea was running when it came time to explain why he delayed in picking up the wreck.

The court, therefore, finds the issues for the defendant on the plaintiff's claim, and accordingly, judgment may enter for the defendant on said claim.

## III

### DEFENDANT'S COUNTERCLAIM

As to the defendant's counterclaim, the court is of the opinion that he has proved by a fair preponderance of the evidence that an oral contract

was entered into on October 2, 1973, for the plaintiff to raise the sunken yawl, "Trick's End" on October 3, 1973, for the sum of $1050. Further, the court is of the opinion that the contract was breached by the plaintiff and that the failure of the plaintiff to perform the contract on time as agreed caused substantial loss to the defendant. The court is also of the opinion that the defendant had no choice but to wait for the plaintiff to do the job since he had investigated other salvagers and found the plaintiff company to be the only one in the area capable of handling the job.

In the opinion of the court, the correct measure of damages does not limit the defendant to the price paid for the boat as alleged by the plaintiff.

## IV

### DAMAGES

Many of the questions posed in this case can be answered by turning to the principle laid out in the old English case of *Hadley* v. *Baxendale,* 9 Exch. 341 (1854). A fair statement of the principle presented therein can be found in 22 Am. Jur. 2d, Damages § 56: ". . . the damages recoverable for breach of contract are such as may fairly and reasonably be considered as arising naturally – that is, according to the usual course of things – from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of its breach." See also McCormick, Damages § 138. In other words, *Hadley* lays down two rules: (1) losses must be of the type usually resulting from the breach of like contracts, or (2) if there are special circumstances, and the damages arise as a result of those special circumstances, recovery can only be allowed if the defaulting party was aware of the special circumstances at the time of entering into the contract. Obviously, as formulated, this rule is suffi-

cient to be applicable to every breach of contract case. In point of fact, the rule's wide applicability has caused it to be adopted by virtually every state. In Connecticut the rule of *Hadley* has been the law since at least the early 1900s and continues today. *Shopper Publishing Co.* v. *Skat Co.,* 90 Conn. 317, 97 A. 317 (1916); *Mazzotta* v. *Bornstein,* 104 Conn. 430, 133 A. 677 (1926); *Valente* v. *Affinito,* 118 Conn. 581, 173 A. 235 (1934); *Talbot* v. *Waterbury Hospital Corporation,* 22 Conn. Sup. 149, 164 A.2d 162 (1960); *Duffy* v. *Woodcrest Builders, Inc.,* 2 Conn. Cir. Ct. 137, 196 A.2d 606 (1963); *Manning* v. *Pounds,* 2 Conn. Cir. Ct. 344, 199 A.2d 188 (1963).

In addition, Connecticut follows the traditional damage theory that contract damages should be awarded with the goal of placing the injured party, so far as possibly can be done by money, in the same position as he would have been if the contract had been fully performed. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 365 A.2d 1086 (1976); *Bertozzi* v. *McCarthy,* 164 Conn. 463, 323 A.2d 553 (1973); *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 320 A.2d 811 (1973). Thus, as long as the breaching party was aware, or should have been aware, of the damage his breach could cause, he will be liable for total damage done.

In the case before the court, the plaintiff salvager allowed a boat to remain stranded on a rock for a greater period of time than the contract with the defendant called for. It is obvious that it is reasonably foreseeable that a consequence of such a breach would be more extensive damage to the boat due to waves, storms, etc. Therefore, based on the above, the plaintiff can be held liable for the additional damage done to the boat in the interim period.

The difficulty with the present case lies, not in the correct measure of damages to be applied, but in the

failure of the defendant to supply the court with sufficient evidence to apply to the rule of damages and thus arrive at a final figure which is fairly representative of the amount of damage suffered by the defendant because of the plaintiff's delay.

The crux of the case lies in determining what the value of the boat was at the time the contract was breached. The alternatives presented were: $500 (price paid by the defendant for the boat) or $71,300 ($75,000 appraised value, minus $1000 salvage costs, minus $2700 estimated repair costs). This, clearly, is a pure fact question. Note, however, that, under this formulation, the damages, absent special circumstances, will not exceed the value of the boat. This is because the boat can have but one "true" value at the time of the breach and that "true" value is the maximum the defendant could lose unless there were special circumstances which had been communicated to the plaintiff, e.g., the boat had to be salvaged within a given time as a condition to the defendant's entering into a million dollar shipping contract.

It makes no difference what the defendant paid for the boat, except as evidence in determining the market value of the boat. If the defendant paid $500 for the boat but the boat had a true worth (market value) of $71,300 ($75,000–$1000–$2700) the loss due to the breach is $71,300 minus the present value of the boat. If the defendant paid $70,000 for the boat the measure of damages would be exactly the same ($71,300 minus present value). The loss is in the damage to the boat, not in any speculative profit.

In order to determine the damage to the vessel caused by the breach of contract it is necessary to determine the value of the boat just before the breach, i.e., the value on October 3, 1973, the day the salvager should have raised it; not the value before the wreck. The $75,000 appraisal ʋy Mr. Gronback referred to

the boat "restored." His estimate of cost of repairs after it was raised was predicated on a before-foundering value.

The testimony and estimate furnished by Mr. Furness were also predicated on restoring the boat to a pre-wreck value.

The testimony of the defendant leaves no doubt that his estimate ($75,000) was based upon a pre-wreck value.

Mr. Gronback dove and examined the boat on September 27, 1973. At that time the masts and rigging were intact. The boat, however, had been resting in the water for a period estimated to be six to nine days. (The wrecked vessel was purchased from the owner on September 24. Mr. Gronback dove and examined it on September 27. The defendant, in testifying on direct examination for the plaintiff, although unable to furnish the exact date on which the boat went down, did testify that he dove to examine it two days after it went down, but before he bought it. On direct examination, the defendant testified that it went down two days before he bought it. On cross-examination he testified that the vessel had been on the rocks five days when he purchased it.)

Mr. Gronback's testimony and written estimate of $2750 referred only to repairs to the hull. Assuming, however, that a wooden vessel subjected to normal tidal action for such a period sustained no greater damage to its hull than that indicated, certainly the furnishings, the engine, the electrical system, the instruments, the stove, the radio all suffered damage.

If the estimate of $75,000[1] was the value of a pre-wreck yacht, then the difference between the cost of repair and raising ($3750) furnished by the defendant

---

[1] This value was set by Mr. Gronback without any reference to the make, age, condition, equipment or history of the boat, but can be accepted for purposes of this analysis.

subtracted from that pre-wreck value would not represent the value of the boat on the date of the breach because the defendant has failed to supply the court with evidence of the cost of repairing all the damage which occurred to the boat between the period just prior to the wreck and the date on which the boat was to be raised October 3, 1973.

In addition to the damage outlined above, it should be noted that considerable vandalism had taken place on the boat between the time of the estimate, September 27, and the date of the contract with the plaintiff. For example, the reason given for retaining the plaintiff was the impossibility of raising the boat in accordance with the defendant's original plan because the masts had been cut off and stolen. No testimony was submitted as to the extent or value of this vandalism damage.

To state it simply, the defendant provided the court with a pre-wreck value from which to assess damages when it should have provided sufficient information from which it could arrive at a value as of the date the plaintiff breached the contract.

The plaintiff had contracted to raise a vessel which had considerably more damage than could have been repaired for $2750. Although its value before the wreck may have been $75,000, it was substantially less than that amount on the date of the breach and insufficient evidence had been provided from which to estimate the value on October 3, 1973.

The burden is on the party alleging damages to prove the same. *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 100, 285 A.2d 330 (1971). It was incumbent upon the defendant to offer sufficient evidence to prove the damages claimed. *Willametz* v. *Goldfeld,* 171 Conn. 622, 628, 370 A.2d 1089 (1976); *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 199, 286 A.2d 308

(1971). Damages are an essential element of the defendant's proof. *Braithwaite* v. *Lee,* 125 Conn. 10, 14, 2 A.2d 380 (1938). Mathematical exactitude in the proof of damages is often impossible, but the defendant must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate. *Hedderman* v. *Robert Hall of Waterbury, Inc.,* 145 Conn. 410, 414, 144 A.2d 60 (1958); *Ball* v. *T. J. Pardy Construction Co.,* 108 Conn. 549, 143 A. 855 (1928).

The defendant was not entitled to recover for full loss of damaged property and since he failed to prove the reasonable amount of loss proximately resulting from the breach of contract, no compensatory damages may be allowed. *Hedderman* v. *Robert Hall of Waterbury, Inc.,* supra.

In the absence of sufficient evidence to place a value on the boat at the time of the breach, it is impossible for the court to assess damages, thus the court must render judgment for the plaintiff on the defendant's counterclaim.