[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff homeowners have brought this action against the defendant, a home inspection company, seeking damages allegedly caused by defendant's failure to discover structural damage caused by wood boring insects. The action is brought in four counts asserting breach of contract, negligence and violation of the Connecticut Unfair Trade Practices Act (CUTPA).
Based on a fair preponderance of the credible evidence, the court finds the following facts proven.
Plaintiffs purchased a home located at 580 Skiff Street, North Haven, Connecticut, on March 28, 1988. Prior to the closing, on February 22, 1988, plaintiffs telephoned the defendant in order to arrange a termite and building inspection of the property. On February 10, 1988, the express inspection contingency period in plaintiffs' real estate purchase and sale contract expired.
During the telephone conversation, the defendant orally agreed for a fee of $150.00 to perform a structural and termite residential home inspection of the property. There was no written agreement detailing the terms of the inspection.
On February 27, 1988, defendant's agent, Lester Warner performed a home inspection of the premises. At the time of the inspection, two main carrying beams ran through the basement; one was painted black and the other had a covering of white fiberboard. The finish on the exposed parts of both beams was deteriorated.
During the inspection, plaintiffs specifically inquired about the condition of the black beam; Mr. Warner rapped on the beam with his knuckles and told the plaintiffs that it appeared to be sound. During the inspection, plaintiffs viewed and discussed with Warner wood decay in the basement area. Warner discussed with plaintiffs the possibility of hidden termite damage and latent termite infestation in those basement areas. During the inspection, Warner orally recommended to the plaintiffs that an in-depth, pre-closing termite inspection and or termite treatment be performed.
Prior to the closing on the property, plaintiffs received a written inspection report from defendant of the findings of the inspection. Plaintiffs read the report in its entirety prior to the closing on the property. A section of the report entitled "Termite Inspection" states that "A careful probing and visual inspection was done of all accessible framing members." No probing was done of the black beam. Page 5 of the report contains the following statement: "Framework, where visible in the basement and attic, is properly sized and in sound condition." CT Page 272
The inspection report recommends that the plaintiffs arrange for an "in-depth termite inspection." The inspection report further states that the inspection was "limited" due to the finished and/or inaccessible nature of certain portions of the basement area.
The inspection report recommends the removal of wood partitions in the basement area for the purpose of revealing possible hidden wood decay and/or latent termite infestation. It expressly indicates the possibility of wood-destroying insect infestation and wood decay that was not visible at the time of the inspection.
The report refers to the possibility that some of the wood decay evident in the basement may have been caused by powder post beetles or other wood-destroying insects. The main carrying beam in the basement was the one finished with a black paint. Only a three-foot piece of that beam was accessible at the time of the inspection.
Plaintiffs did not arrange for an in-depth termite inspection prior to the closing on the property. At the time of the inspection, plaintiffs knew what probing was and saw Warner knock on the main carrying beam. They did not request a probing at that time.
The plaintiff Gregory Prishwalko discovered wood decay in the interior portion of the black beam while replacing plumbing in the basement area of the property in late Summer, 1988. He accidentally struck it with a blunt piece of plastic pipe, which went into the beam.
Subsequent investigation of the premises by plaintiffs, a contractor and structural engineer revealed extensive structural insect damage to other areas of the basement, the floor joints, stairway, front door frame, the other main carrying beam, and other components.
After discovering the wood decay in the interior portion of the finished beam, Mr. Prishwalko used a hammer claw and his hand to remove more of the finish and exposed more of the interior of the beam. After exposing the interior of the beam, plaintiffs began to remove partitions in the basement area in order to expose more of the interior portions and wall studs to plain view.
Mark Rizzo, a contractor, estimated the cost of repairing the structural damages as follows:
carpentry/general labor $ 21,360.00 CT Page 273 plumbing 1,500.00 electrical 2,000.00 ----------- $ 24,860.00
The plaintiffs and their immediate family spent over 100 hours doing much of the repair work. There was no evidence as to the value of their labor. Plaintiffs also had repair work done at or below cost by contractors whom they knew. The repair work is not complete, although the house is now structurally sound.
Only a sample of the "accessible framing members" were probed. Had Mr. Warner probed the black beam, rather than just rapping on it, the damage may been discovered at the time of inspection.
Warner conducted the inspection of the property in accordance with the Standards of Practice of the American Society of Home Inspections ("ASHI"). The ASHI Standards of Practice do not permit the removal of walls or the probing of finished surfaces by home inspectors.
Plaintiffs began repair work on the decayed portions of the basement in the summer of 1989. Plaintiffs' witness, Richard A. Nagle did not see the property prior to plaintiffs removal of portions of the walls in the basement area or the exposure of wood decay in the interior portion of the beam. Nagle was asked by plaintiffs to assess the extent of wood decay that was visible in the basement area. The wood decay visible at the home of Nagle's inspection was not visible at the time of Warner's inspection.
No evidence was presented concerning damage done between the time of Warner's inspection and the date of plaintiffs' discovery of the interior wood decay. There was no evidence indicating that at the time of the original inspection or other relevant time, the property was damaged by or infested with termites.
Count One: Breach of Contract
"It is elementary that to create a contract there must be an unequivocal acceptance of an offer. In the case of a bilateral contract, the acceptance of the offer need not be express but may be shown by any words or acts which indicate the offeree's assent to the proposed bargain. . . . The acceptance of the offer must, however, be explicit, full and unconditional. . . . And the burden rested on the plaintiff to prove a meeting of the minds to establish its version of the claimed contract. Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 246
(1970). CT Page 274
The plaintiffs have the burden of proving that a contract existed between plaintiffs and defendant, the terms of the contract, and that defendants have breached the contract. Thames Shipyard and Repair Co. v. Williametz, 37 Conn. Sup. 19, 26-27
(1978), aff'd. 184 Conn. 213 (1981).
Implicit in a contract for services is a promise by the provider that he will act in a skillful, competent and workmanlike manner. Krol v. Goldring, 38 Conn. Sup. 610, 613 (1982). Plaintiffs bear the burden of proving that the defendant did not perform the inspection which in a manner that met the appropriate standard.
The court agrees with plaintiffs that the disclaimer recited in the report is not binding on plaintiffs under the circumstances of this case. Perillo v. Housing Authority, 16 Conn. Sup. 106
(1949).
In this case, the parties entered into an oral agreement for defendant's services. Plaintiffs, in their real estate purchase and sale contract had the right to conduct a "termite and building inspection" of the premises prior to sale. Plaintiffs allege in their complaint that defendant agreed to "conduct an on-site inspection of the entire house located at 580 Skiff Street, North Haven, Connecticut and to report any evidence of termite activity in the subject house." Defendant's report dated February 27, 1988, recites in the preamble that ". . . this report is based on the unconcealed conditions that were visible at the time of the inspection." The report concludes by stating: "The observations and opinions presented in this report are based on visible conditions in areas that were readily accessible at the time of the inspection." The report is replete with warnings that a limited termite inspection" was performed, that some damage may be hidden from view and not detected and, further, that a more in-depth termite inspection was recommended.
These statements in the report cannot specifically be construed to be part of the parties' original agreement, since, of course, they were not agreed to by the plaintiffs. However, the court notes that plaintiffs, upon receiving defendant's report, made no claim that defendant failed to perform the inspection which it had agreed to do. In the absence of greater specificity obligating defendant to perform a particular type of inspection, meeting a specific standard, it is reasonable to conclude that the parties agreed that defendant would conduct a residential home inspection of the visible and unconcealed conditions of the house existing at the time of the inspection, including an inspection to detect termite infestation or damage. There was no obligation on the part of defendant to inspect and evaluate, without limitation, the structural condition of the home. Defendant's obligation was to inspect and evaluate visible conditions and areas that were CT Page 275 readily accessible at the time of the inspection.
Plaintiffs primary claim appears to be that, by failing to probe the black beam with a sharp instrument such as a screwdriver sufficient to penetrate the damaged area, defendant failed to meet its contractual obligations of acting in a skillful and workmanlike manner. This court notes that defendant's report states that ". . . (a) careful probing and visual inspection was done of all accessible framing numbers." Plaintiffs claim that, had this action been performed, the termite damage would have been discovered.
The plaintiffs were present at the inspection, and were aware that the black beam was merely tapped and not actually probed by Mr. Warner. Plaintiffs, at that time, could have requested actual probing of the beam which could have damaged it. It cannot be inferred with probability that probing with an instrument would have revealed the deteriorated condition, in any event, since it was discovered only when struck with a pipe by Gregory Prishwalko some time later.
In performing the inspection, defendant complied with the ASHI standards. While those standards were not incorporated in the parties' agreement, they do constitute persuasive evidence of the standards of skill and workmanlike performance concerning the home inspection business.
The court concludes that the manner in which defendant conducted the termite inspection complied with its contractual obligation to base its conclusions on visible, unconcealed conditions. While it is true, in hindsight, that probing of the beam may have caused the interior condition to be revealed at that time, that fact was not proven by the requisite standard. In any event, the established defendant was not obligated to conduct the probing based on the parties understanding as evidenced by their words and conduct, at the time the agreement was made and the inspection performed. The report carefully qualified the termite inspection as "limited" and alerted plaintiffs to the possibility of concealed termite damage as well as the necessity of an in-depth termite inspection.
Count Three: Negligence
A defendant may be liable for the breach of duty arising out of a contractual relationship." Neiditz v. Morton S. Fine Associates, Inc., 2 Conn. App. 322, 328 n. 7 (1984). Liability for negligence in the performance of a contract may arise independently of any liability for breach of contract. "Even though there may not be a breach of contract, liability may arise because of injury resulting from negligence occurring in the CT Page 276 course of performance of the contract." Johnson v. Flammia,169 Conn. 491, 496 (1975).
When the defendant undertook the inspection of the plaintiffs' house, it was obligated to exercise that degree of care which a skilled home inspector of ordinary prudence would have exercised under the same or similar conditions. Johnson, supra at 496.
Recovery of damages based on a negligence claim requires proof that a defendant owed a duty of care to the plaintiff which was breached by the defendant's failure to meet the standard of care arising therefrom and that the breach was the proximate cause of actual harm suffered by the plaintiff. Coburn v. Lenox Homes, Inc., 186 Conn. 370, 372 (1982).
The existence of a duty of care may arise from a contract or from circumstances under which a reasonable person knowing what he knew or should have known, would anticipate that harm or the general nature of that suffered was likely to result from his actions. Frankovitch v. Burton, 185 Conn. 14, 20 (1981).
The duty owed in this case was a duty to report to the plaintiffs the unconcealed conditions in the accessible areas of the home that were visible at the time of the inspection.
As noted above, the defendant performed the inspection in this case, in accordance with the ASHI Standards. Defendant identified the wood decay, moisture and potential infestation problems in the basement area of the plaintiffs' property. Warner also examined those visible areas in which he suspected there might be problems with deterioration. Finally, the report clearly notes the limited nature of the termite inspection, given the inaccessibility of some members and the finished nature of others, and recommends an in-depth termite inspection.
As noted previously, the plaintiffs accompanied Warner during the inspection and discussed the wood decay and evidence of past water in the basement. Defendant specifically noted the wood decay and moisture in the report and repeated the recommendation of an in-depth inspection. The facts in this case do not support a duty rising above identifying the unconcealed conditions visible at the time of the inspection.
Nothing in the parties' agreement or in the report suggests that there was any duty on the part of defendant to evaluate latent termite infestation or activity in the property or to perform more than a visible home inspection. Defendant has complied with its duty to the plaintiffs in this case. CT Page 277
Causation of Damages
Although it is not necessary to discuss the issue of causation of damages, the court notes that in order to recover for damages under the negligence theory pleaded by plaintiff, the plaintiffs would have to show that the damage to their property was proximately caused by defendant's conduct. Krol,38 Conn. Sup. at 612-13. Under the contract theory, they would have to prove that the damages would reasonably have been contemplated by the parties as the probable result of the breach. Thomas v. Shipyard, 37 Conn. Sup. 19 at 22.
In this case, the plaintiffs failed to exercise the right to have a property inspection done within the time allowed under the Sales Agreement. Plaintiffs were to complete an inspection by February 10, 1988. They did not contact defendant until February 22, 1988 and the inspection did not occur until February 27, 1988.
Under these circumstances the contingency period had already elapsed. Even if plaintiffs had discovered the extent of latent termite damage present on the premises, they had relinquished their rights to terminate under the purchase and sales Agreement.
Counts Two and Four
The plaintiffs have alleged a violation by defendant of the provisions of CUTPA, Connecticut General Statutes, Section 42-110b.
In order to establish a claim for a violation of CUTPA, a plaintiff bears the burden of proving that a defendant's conduct am amounts to an "unfair act or practice" or that its conduct is "deceptive" within the meaning of those terms under the act. McLaughlin Ford v. Ford Motor Co., 192 Conn. 558, 567-68 (1984); Hinchliffe v. American Motors Corporation, 39 Conn. Sup. 107,120-22 (1982).
Under CUTPA, conduct is unfair where it, without necessarily having been previously considered unlawful, (1) offends public policy as established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers. McLaughlin,192 Conn. at 568.
None of the conduct alleged in the present case rises to the level of an unfair or deceptive act under CUTPA. As already discussed, the report alerted the plaintiffs to problems visibly present in the basement and to the need for an in-depth termite inspection. The provision of CUTPA do not apply in this case where the court has found defendant in compliance with its duties to the plaintiffs, arising in contract and negligence. CT Page 278
For the foregoing reasons, judgment may enter in favor of defendant on all counts.
BARRY R. SCHALLER, Judge