JOSEPH GARGANO *v.* ANNETTE HEYMAN
(13084)

HEALEY, SHEA, SANTANIELLO, CALLAHAN and D. DORSEY, Js.

Argued March 6—decision released May 26, 1987

*Hanon W. Russell,* for the appellant (plaintiff).

*Lawrence P. Weisman,* with whom, on the brief, was *Ellen B. Lubell,* for the appellee (defendant).

CALLAHAN, J. The plaintiff, Joseph Gargano, d/b/a Milford Plaza Laundry, occupied space in the Milford Plaza pursuant to a written lease agreement under which the plaintiff was the assignee. The defendant, Annette Heyman, is the owner of the premises. The plaintiff filed suit against the defendant alleging, inter alia, that she violated the Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; when she terminated the electrical service to the premises. The defendant counterclaimed for unpaid rent and waste. The trial court rendered judgment for the defendant in accordance with the report of attorney state trial referee Robert E. Quish. The plaintiff challenges the findings of the referee and the acceptance by the trial court of the referee's report. Specifically, he claims that the referee erred in finding that the plaintiff (1) did not suffer damages as a result of the defendant's willful violation of CUTPA, (2) failed to prove that the defendant's willful termination of the electrical service caused monetary loss, (3) was not entitled to punitive damages, and (4) did not surrender the premises in as good a condition as the reasonable use thereof permitted. We find no error.

The report of the referee contained the following findings of fact: The plaintiff operated a coin-operated laundromat and a dry cleaning pick-up station on the

premises leased from the defendant and located in the Milford Shopping Plaza. The lease term ran from July 1, 1974, until June 30, 1984. On two occasions in June, 1984, the defendant notified the plaintiff by letter that the lease would expire on June 30, 1984, and that she expected the plaintiff to vacate the premises on or before that date. The plaintiff failed to vacate on June 30, 1984, and on July 2, 1984, the defendant caused the electricity to be turned off. It was not until January, 1985, that the plaintiff vacated the premises.

The referee found that the defendant's act in shutting off the electricity constituted an unfair practice under CUTPA. The referee noted that the proper action on the part of the defendant would have been to commence a summary process action in accordance with the provisions of the lease. He went on to find, however, that the plaintiff had failed to prove that he had suffered an ascertainable loss of money or property as a result of the defendant's prohibited act, and therefore he could not recover any damages. The referee, therefore, recommended that judgment be rendered for the defendant on the complaint, and that the defendant recover $5071.03 on her counterclaim for damage to the premises caused by the plaintiff. Both the plaintiff and the defendant filed motions to correct the report of the referee pursuant to Practice Book § 438.[1] In response, the referee issued a memorandum

---

[1] "[Practice Book] Sec. 438. MOTION TO CORRECT

"If either party desires to have the report or the finding corrected by striking out any of the facts found, or by adding further facts, or by stating the claims of the parties made before the committee, or by setting forth rulings upon evidence or other rulings of the committee, he shall within two weeks after the filing of the report or finding file with the court a motion to correct setting forth the changes and additions desired by him. He shall accompany the motion with a brief statement of the grounds of each correction asked, with suitable references to the testimony. The file shall then be returned to the committee for consideration of the motion to correct. As soon as practicable the committee shall file with the court the motion to correct, together with his decision thereon."

of decision on the motions to correct, in which he reaffirmed his denial of actual and punitive damages for the plaintiff, and the award of damages to the defendant. Pursuant to Practice Book § 439,[2] the plaintiff filed exceptions to the report and findings of the referee. The trial court, however, affirmed and rendered judgment in accordance with the referee's report.[3]

I

The plaintiff's first two claims of error challenge the findings of the referee with respect to the plaintiff's actual damages. Although the referee found that the defendant had violated CUTPA, he went on to find that the plaintiff had not suffered an ascertainable loss of money or property as a result of the defendant's con-

---

[2] "[Practice Book] Sec. 439. EXCEPTIONS TO REPORT OR FINDING

"If a committee fails to correct a report or finding in compliance with a motion to correct, the moving party may, within ten days after the decision on the motion to correct, file exceptions seeking corrections by the court in the report or finding. The court will not consider an exception unless its subject matter has been submitted to the committee in a motion to correct, provided that this requirement shall not apply to exceptions taken to corrections in the report or finding made after it was filed; nor will the court correct a finding of fact unless a material fact has been found without evidence or the committee has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear. A party excepting on these grounds must file with his exceptions a transcript of the evidence taken before the committee, except such portions as the parties may stipulate to omit."

[3] The plaintiff did not file an objection to the acceptance of the referee's report in accordance with Practice Book § 440. He did, however, properly file both a motion to correct pursuant to Practice Book § 438, and a subsequent exception to the report and findings of the referee pursuant to Practice Book § 439, which the court overruled in rendering judgment for the defendant. See *Midland Ins. Co.* v. *Universal Technology, Inc.,* 199 Conn. 518, 521–22, 508 A.2d 427 (1986); *Jensen's, Inc.* v. *Killingworth,* 152 Conn. 237, 243, 206 A.2d 114 (1964). He is, therefore, entitled to full appellate review of the trial court's disposition of his exceptions to the report. Cf. *Ross* v. *Renzulli,* 9 Conn. App. 87, 90, 516 A.2d 149 (1986); *Blessings Corporation* v. *Carolton Chronic & Convalescent Hospital, Inc.,* 7 Conn. App. 364, 366–67, 508 A.2d 829 (1986).

duct as required by General Statutes § 42-110g (a).[4] The referee determined that the plaintiff had failed to prove that shutting off the electricity caused a loss of money that would not have occurred if he had vacated as he should have on June 30, 1984.[5]

At the outset, we note that the burden of proving damages is on the party claiming them. *Conaway* v. *Prestia,* 191 Conn. 484, 493–94, 464 A.2d 847 (1983); *Riccio* v. *Abate,* 176 Conn. 415, 418, 407 A.2d 1005 (1979); *Thames Shipyard & Repair Co.* v. *Willametz,* 37 Conn. Sup. 19, 26, 428 A.2d 1143, aff'd, 184 Conn. 213, 439 A.2d 948 (1978). It is then the province of the trier of fact to weigh the evidence presented and to determine the credibility and effect to be given the evidence. *Riccio* v. *Abate,* supra; see *Abbott* v. *Bristol,* 167 Conn. 143, 146, 355 A.2d 68 (1974); *Kowalsky Properties, Inc.* v. *Sherwin-Williams Co.,* 7 Conn. App. 136, 139–40, 508 A.2d 43 (1986).

To support his claim for damages, the plaintiff offered his 1983 and 1984 federal income tax returns and testimony concerning an offer to purchase his business. He claims that his lost profits can be measured by taking the difference between his net profits as reported

[4] "[General Statutes] Sec. 42-110g. ACTION FOR DAMAGES. CLASS ACTIONS. COSTS AND FEES. EQUITABLE RELIEF. (a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper. . . ."

[5] We note that we do not adhere to the proposition that a tenant at sufferance cannot sustain damages; see *McKinnon* v. *Cantarutti-Althuizen,* 98 Nev. 72, 639 P.2d 563 (1982); 2 Restatement (Second), Property § 14.2; annot., 17 A.L.R.2d 936; cf. *Welk* v. *Bidwell,* 136 Conn. 603, 610–11, 73 A.2d 295 (1950); nor did the referee base his finding on this notion as the plaintiff would have us believe.

on his 1983 and 1984 tax returns. During the defendant's cross-examination of the plaintiff, however, it was revealed that in 1984, the plaintiff relocated one of the two businesses he had operated on the defendant's premises during 1983. The court was not obliged to accept the plaintiff's testimony that he could not find a suitable location for the business that remained on the premises for the entire period covered by his 1984 tax return. In addition, the plaintiff presented the testimony of Louis Amadio, a business broker, that a ready, willing and able buyer had been provided to purchase the plaintiff's business in January, 1984, at a purchase price of $100,000. This testimony was apparently offered to show the value of the business and the subsequent loss of profit when the plaintiff was allegedly put out of business as a result of the defendant's act. Amadio testified, however, that the purchase offer was contingent upon the plaintiff's securing a renewal of his lease from the defendant. When the defendant refused to renew the lease, the plaintiff's prospective purchaser withdrew the offer. Amadio further testified that "it would have been virtually impossible" to sell the plaintiff's business without a lease.

We cannot conclude that the referee was incorrect in finding, in light of this evidence, that the plaintiff had failed to prove an ascertainable loss of money. Although we recognize that damages for lost profits may be difficult to prove with exactitude; see *Conaway* v. *Prestia,* supra, 494; *Burr* v. *Lichtenheim,* 190 Conn. 351, 360, 460 A.2d 1290 (1983); *Humphrys* v. *Beach,* 149 Conn. 14, 21, 175 A.2d 363 (1961); such damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty. *Conaway* v. *Prestia,* supra; *Simone Corporation* v. *Connecticut Light & Power Co.,* 187 Conn. 487, 494–95, 446 A.2d 1071 (1982); *Humphrys* v. *Beach,* supra. The evidence presented by the plaintiff did not afford such a basis.

## II

The plaintiff next claims that the referee's finding denying punitive damages was incorrect. The referee found that, under the circumstances of this case, the action of the defendant was not of such a serious nature as to warrant punitive damages. In arguing for a reversal of this finding, the plaintiff claims that this is the type of outrageous conduct which warrants invoking the punitive provisions of CUTPA. We disagree.

Awarding punitive damages and attorney's fees under CUTPA is discretionary; General Statutes § 42-110g (a) and (d); see *Bailey Employment System, Inc.* v. *Hahn,* 545 F. Sup. 62, 73 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983); and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983); *Long* v. *Schull,* 184 Conn. 252, 258, 439 A.2d 975 (1981); *Lamont* v. *New Hartford,* 4 Conn. App. 303, 307, 493 A.2d 298 (1985). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 489, 234 A.2d 825 (1967). In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. *Triangle Sheet Metal Works, Inc.* v. *Silver,* 154 Conn. 116, 128, 222 A.2d 220 (1966)." *Venturi* v. *Savitt, Inc.,* 191 Conn. 588, 592, 468 A.2d 933 (1983). While the defendant's conduct in terminating the electrical service to the premises was not the proper action to take under the lease, we cannot conclude that the referee abused his discretion in finding that the circumstances of this case did not satisfy the basic requirements, as set forth above, which justify the award of punitive damages.

## III

Finally, the plaintiff claims that the referee erred in awarding damages to the defendant on her counterclaim. The referee found that the defendant's premises were left in a shambles by the plaintiff and that photographs taken by the defendant clearly showed that the plaintiff did not surrender the premises in as good condition as the reasonable use thereof permitted. The plaintiff argues that this finding cannot stand because the defendant failed to present any testimony or evidence to show that any damages which occurred to the premises were beyond those expected from ordinary wear and tear. We disagree.

In order to recover damages for waste, a claimant has the burden of "showing that the lease has terminated; showing with reasonable certainty the condition of the premises, or the portion of the premises complained of, at the inception of the term; showing the specific items of damage and the reasonable cost of repairing the items . . . . " 2 M. Friedman, Leases (2d Ed.) § 18.1, p. 950; *Raybestos-Manhattan, Inc.* v. *Friedman,* 156 Ga. App. 880, 275 S.E.2d 817 (1981). In the present case, there is no dispute that the lease had terminated on July 1, 1984. The defendant introduced into evidence the lease, which contained a provision stating that the tenant had examined the premises and accepted them in their present condition, and was obligated to surrender the premises in as good condition as reasonable use would permit. In addition, photographs were introduced which showed the condition of the premises after the plaintiff had vacated. An employee of Heyman Properties, who had taken the photographs, testified extensively about the condition of the premises after the plaintiff had vacated, stating that there were abandoned dryers, waste pipes and other debris, an accumulation of chemicals used in the

plaintiff's drycleaning business, and ceiling and floor damage caused by the removal of some of the plaintiff's equipment. Certainly the referee could reasonably have concluded that these conditions did not exist at the beginning of the plaintiff's lease term and did not result from ordinary wear and tear. With respect to showing the specific items of damage and the reasonable cost of repairing those items, the defendant presented testimony and invoices which support the referee's findings on the repair work to the premises. We find no merit to any of the plaintiff's challenges to the referee's findings or to the judgment in accordance therewith.

There is no error.

In this opinion the other justices concurred.