[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action, which is brought in two alternate counts[1], seeks damages for nonpayment of rent pursuant to a commercial lease or CT Page 696-P damages for use and occupancy, plus damages for nonpayment of a water bill. The defendant Deborah Allen (the defendant) has filed a counterclaim seeking damages for various breaches of the lease. At the inception of the trial, the plaintiffs' attorney orally withdrew the action as to the co-defendant, Ramiro Torres, husband of the plaintiff.
The court finds that on December 9, 1985, the defendant as lessee and Michael Romano and Elizabeth Stevens as lessors entered into a lease for premises located 14 Mechanic Street, New Haven and for certain enumerated personal property. The defendant used the premises and personal property in connection with a restaurant she owned, called Aztecas Restaurant. The lease provided that the defendant leased the premises "for the term of five years commencing on December 15, 1985 and expiring on December 14, 1990 payable in monthly in monthly payments, in advance, during said term, unless sooner terminated or extended as hereinafter provided with the rent being set forth as follows:
"FIRST YEAR: Two Thousand ($2,000.00) Dollars per month.
 "SECOND THROUGH FIFTH YEARS: To be negotiated annually six weeks prior to anniversary date of lease. Any increase not to exceed ten per cent (10%) of previous year." CT Page 696-Q
Although there was no formal evidence of extensions of the lease, all parties acknowledge or assumed in their testimony that the lease had been renewed and would expire at the end of December 1995.[2] Pursuant to the terms of the lease, the defendant had a right of first refusal with respect to the purchase of the property.
At some point prior to September, 1994, a banking institution obtained title to the property. In exchange for the defendant's release of her right of first refusal, the bank agreed to, inter alia, "[c]ontinue to accept the sum of $1,200.00 per month as full payment of the rent as long as it continues to own the property" and "[d]eem the furnishings and personal property on the premises to belong to [the defendant]."
On June 23, 1995, the plaintiff purchased the property and assumed the lease. At that time, she knew that the defendant's lease would expire in December and she intended to relocate her own restaurant in the building. The relationship between the plaintiff and the defendants was a stormy one. The defendants never paid the plaintiff any rent, the plaintiff encountered some difficulty in obtaining access to the building for the purpose of effectuating repairs, and the plaintiff liberally vented her anger on the defendants. On November 30, 1995, the defendant vacated the CT Page 696-R premises.
 I
There is no question that the defendant never paid the plaintiff any rent. The only question is what the monthly rental agreement, if any, was. The plaintiff obtained title to the building from the bank. As recited above, while the bank held title, it entered into an agreement with the defendant to "[c]ontinue to accept the sum of $1,200.00 per month as full payment of the rent as long as it continues to own theproperty. . . ." (Emphasis added.) In her post-trial brief, the plaintiff points to the italicized words as evidence that the rent necessarily reverted to the stated sum of $2,000.00 once the bank relinquished title. The defendant argues that this cannot be so because the $2,000.00 rental was for the rental or real and personal property, and the bank had effectively conveyed the personal property to the defendant.
The lease provided that after the first year of tenancy the rent was "[t]o be negotiated annually six weeks prior to anniversary date of lease. . . ." The evidence was that the defendant paid the bank $1,200.00 per month prior to the plaintiff's purchase of the property in June 1995. The circumstantial evidence is, and the court finds, that the agreed CT Page 696-S upon rental for the year 1995 was $1,200.00. When the plaintiff assumed the lease, she assumed this agreement. Rent was unpaid for the months July through November. Therefore, the defendant owes the plaintiff $6,000 less her $4,291.73 security deposit.
 II
The plaintiff also claims that the defendant failed to pay a water bill for the premises. The lease provided in paragraph 3, inter alia: "Lessee agrees to pay all charges for all utility service, including gas, electricity, water[,] oil and telephone service to said demised premises except for water for the first year of the lease or until separate water meters are installed whichever shall occur later, which shall be paid by Lessor."
There was conflicting testimony as to whether the restaurant was separately metered. While it would not be unfair to charge the defendant with the water bill, since the restaurant used nearly all the water consumed in the building, the court is bound by (1) the terms of the lease, and (2) the principle that "[i]t was the plaintiff's burden to prove h[er] own case by a preponderance of the evidence." Vigorito v. Allard, 143 Conn. 70, 71 (1955). The plaintiff's testimony with respect to whether separate meters had ever been installed was uncertain. She did not sustain her burden of proof as to this issue. CT Page 696-T
 III
The plaintiff also makes a claim that she "suffered damages due to lost rent for the second floor of said premises in the amount of $2,200.00 ($550.00 per month for 4 months), due to defendant's wrongful failure to leave said premises interfering with plaintiff's ability to repair the floor to said premises." Here again the evidence was conflicting. The defendant understandably did not want such repairs being made between 12:00 noon and 9:00 p.m., her preparatory and business hours. However, the repairs still could have been made in the morning or on Sunday and Monday when the defendant's business was closed. The plaintiff has not sustained her burden of proof as to this issue.
 IV
The second count of the revised complaint seeks damages against the defendant and the co-defendant Lynne DeLeo in the event the lease had expired. First, as noted supra, at trial the parties all treated the case as one in which the lease was extant and due to expire in December 1995. Second, although there was evidence that Lynne DeLeo was an owner of the restaurant which occupied the demised premises, the better and more persuasive evidence was that she was not an owner. The court finds that the defendant DeLeo was CT Page 696-U not a tenant, lessee, possessor or occupier of the premises. Rather, she was an employee of the defendant lessee. The defendant DeLeo, therefore, was not liable for rent.
 V
The defendant has asserted a counterclaim against the plaintiff for breaching the lease by failing to make certain repairs and for repeatedly threatening her. The latter charge imports an ever-popular CUTPA claim into the case.
Of the various breaches alleged by the defendant, only one is supported by evidence and bears mention. There was an occasion when a pipe in the ceiling of the defendant's restaurant leaked profusely and caused the defendant to close down for an evening. This caused a loss of business of about sixty patrons. The defendant thus proved a breach by the plaintiff of the implied covenant of quiet enjoyment, for which damages may be awarded. Cf.S.H.V.C., Inc. v. Roy, 37 Conn. Sup. 579, 585-587, 428 A.2d 806
(App. Sess. 1981). We turn, then, to the question of damages.
"At the outset, we note that the burden of proving damages is on the party claiming them. Conaway v. Prestia, 192 Conn. 484,493-94, 464 A.2d 847 (1983); Riccio v. Abate, 176 Conn. 415, 418,407 A.2d 1005 (1979); Thames Shipyard Repair Co. v. Willametz,
CT Page 696-V37 Conn. Sup. 19, 26, 428 A.2d 1143, affirmed, 184 Conn. 213, 439 A.2d 948
(1978)." Gargano v. Heyman, 203 Conn. 616, 620, 525 A.2d 1343
(1987). "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action `should place the injured party in the same position as he would have been in had the contract been performed.' Rametta v. Stella, 214 Conn. 484, 492,572 A.2d 973 (1990). The injured party, however, `is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain.' Vines v. Orchard Hills, Inc., 181 Conn. 501,507, 435 A.2d 1022 (1980). Guarding against excessive compensation, the law of contract damages limits the injured party `to damages based on his actual loss caused by the breach.' 3 Restatement (Second), supra, § 347, comment (e). The concept of `actual loss' accounts for the possibility that the `breach itself' may result in `a saving of some cost that the injured party would have incurred if he had had to perform.' Id., comment (d). In such circumstances, the amount of the cost saved `will be credited in favor of the wrongdoer'; 5A Corbin, supra, 1038; that is, `subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages.' 3 Restatement (Second), supra; see 11 S. Williston Contracts (3d Ed. Jaeger) 1338, 1339." (Footnote omitted.) Argentinis v. Gould, 219 Conn. 151, 157-158, 592 A.2d 378
(1991).
The defendant testified that the average bill for a patron was CT Page 696-W between $35.00 and $50.00 for such an evening. However, food costs money; labor costs money. There was no evidence as to these expenses and, hence no way in which the court can determine the defendant's true, net loss. The defendant's argument in her brief to the contrary is not supported by evidence. "Although we recognize that damages for lost profits may be difficult to prove with exactitude . . . such damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty. . . . The evidence presented by the [defendant] did not afford such a basis." Garganov. Heyman, supra 203 Conn. 621
Still, "[i]n a case where a [claimant's] clear legal right has been invaded [s]he is entitled to at least nominal damages." Letschv. Slady, 145 Conn. 401, 402-403, 143 A.2d 642 (1958). "Our Supreme Court has held . . . that an award of $100 can qualify as nominal damages. Hammarlund v. Troiano, 146 Conn. 470, 473, 152 A.2d 314
(1959)." Creem v. Cicero, 12 Conn. App. 607, 611, 533 A.2d 234
(1987); see Brady v. Anderson, 110 Conn. 432, 438, 148 A. 365
(1930); Anderson v. Schieffer, 35 Conn. App. 31, 36, 645 A.2d 549
(1994). Accordingly, the court awards the defendant $100 nominal damages.
VI CT Page 696-X
Finally, the defendant asserts a CUTPA claim against the plaintiff. The defendant claims that at various times while her tenancy coincided with the plaintiff's ownership of the building, the plaintiff threatened to lock her out, throw her personal property out, and to kill her. The plaintiff denies this and argues that a landlord-tenant relationship cannot give rise to a CUTPA violation.
General Statutes § 42-110b(a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b(b) provides: "It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a)(1), as from time to time amended."
In accordance with this legislative intent, the Connecticut Supreme Court has "adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a practice is unfair: `(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common CT Page 696-Y law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].'" McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567-568,473 A.2d 1185 (1984).
However, the short answer to the defendant's CUTPA claim is that she failed to prove any "ascertainable loss" as a result of the plaintiff's alleged threats. Ascertainable loss is a statutory prerequisite to recovery under CUTPA. General Statutes §42-110g(a)[3]; see Gargano v. Heyman, supra, 203 Conn. 619-620.
Judgment may enter in favor of the plaintiff on the complaint and against the defendant Deborah Allen only in the amount of $1,708.37. Judgment may enter in favor of the defendant Lynne DeLeo on the complaint. Judgment may enter in favor or the defendant Deborah Allen on the counterclaim in the amount of $100.00.
BY THE COURT
Bruce L. LevinJudge of the Superior Court
CT Page 696-Z