[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Trial in this case was held before the undersigned judge on April 23, 1997, May 2, 1997, and May 6, 1997.
The First Count of the Amended Complaint, dated June 23, 1994, alleges that on or about July 13, 1990, the plaintiff was the owner of certain property known as Commerce Park, located off of Stockhouse Road in Bozrah, and that on or about that date, the plaintiff owned 10,002 cubic yards of crushed stone at the site The First Count continues to allege that on or about that date, the defendant Raymond C. Barber, first selectman, entered into an agreement pursuant to which the town would pay $5.00 to $6.00 per cubic yard for all crushed stone picked up and loaded by the Town of Bozrah. It continues to allege that between approximately September, 1990 and October 6, 1992, the Town of Bozrah picked up and loaded a total of 9,208 cubic yards of crushed stone from the premises. Although the defendants have paid to plaintiff a sum of $19,056 during the relevant time period, said payments represent payment for only approximately 3,300 yards, it is alleged, with a balance due and owing in the amount of $36,192.00. Demand has been made, it is alleged, but defendants have failed and refused to make payment.
The Second Count repeats and realleges the essential allegations of the First Count, and then alleges that the reasonable value of the crushed stone was $36,192.00.
The Third Count alleges that the contract between plaintiff and defendants was a contract for the sale of goods made in accordance with Connecticut General Statutes Section 42a-2-204 et seq. The Third Count also alleges, in substance, that defendants agreed to weigh the crushed stone taken and maintain and keep accurate records of the quantity of crushed stone taken, but failed to do so.
In their Amended Answer, Counterclaim and Setoff dated January CT Page 8878 20, 1995, defendants denied all material allegations of the Amended Complaint.
Following the completion of the evidence, the Court ordered the parties to file briefs analyzing all claims and defenses asserted, including proposed findings of fact and conclusions of law. In light of the particular issues raised at trial, the Court ordered the parties to specifically address all damages claims, with particular attention to various cases involving proving losses and damages. The parties' post-trial submissions have now been reviewed. On July 31, 1997, defendants filed a Motion to View Property, which was denied because I concluded that a view of the premises would not materially assist me in deciding the issues presented.
Having reviewed the full record and considered all of the testimony, including reasonable inferences to be drawn from proven facts, I conclude that judgment should enter for defendants on all three counts of the complaint.
Findings of Fact
The testimony and evidence at trial, to significantly summarize and simplify, established the following facts.
In 1988, plaintiff Richard Gurland purchased the subject property, now known as Commerce Park Subdivision in Bozrah. As a consequence of blasting which was performed on the property, a large quantity of "shotrock" was produced, which was crushed into gravel by Chapman Crushing. The gravel was placed on parcel four of the Gurland property. Mr. Gurland retained a land surveyor to perform a profile of the crushed stone. The survey was performed on November 3, 1988. The profile resulted in a calculation of the amount of crushed stone to be 10,002 cubic yards. See Plaintiff's Exhibit 1. After this initial survey, no other surveys of the gravel were performed.
The plaintiff hired Rumco Landscaping to do grading work and some excavation on the parking lot and road in question. Some areas of the parking lot and Commerce Park Road had to be filled with gravel due to "voids" and "dips" — uneven areas — in the ground. Rumco removed gravel from parcel four to use around catch basins on Commerce Park Road, to provide backfilling around the Viking Aluminum Building, for use on Commerce Park Road, and under the parking lot of Commerce Park Road. Rumco's work was initially CT Page 8879 performed by Todd Zimbowski, but was completed by his father, Charles Zimbowski. The evidence indicated that Rumco did not keep records as to the quantities of gravel removed from parcel four and deposited on the plaintiff's project. Testimony indicated that Rumco worked on the Commerce Park Road Subdivision for approximately a year. Rumco used all the gravel necessary to complete the job. Because the town engineer concluded that the plaintiff's gravel was not of sufficient quality, the town required the plaintiff to purchase additional gravel for use on Commerce Park Road. This gravel was purchased from a company owned by Seymour Adelman of Seymour's Sand and Stone, in June 1989.
After Rumco completed its work, a significant but unquantified amount of crushed stone and gravel was still located on parcel four. The evidence indicated that the gravel was located in a hollowed out area on parcel four, approximately 50 x 75 feet and about 6 feet in depth. See plaintiffs Exhibit 13.
More specifically, the plaintiff and the defendant, Raymond Barber, who was first selectman and who was acting on behalf of the town, entered into an oral agreement for the purchase of crushed gravel. The gravel was to be sold for $6.00 per cubic yard. The town agreed to buy the gravel owned by plaintiff and pick it up from the pile at Commerce Park Road. Mr. Barber indicated that when the agreement was made, the town intended to use all of the gravel located at Commerce Park Road. Mr. Barber also orally agreed that the town would keep accurate records of the quantities of stone taken and the dates of removal of these quantities. This initial agreement was reaffirmed in August, 1992, See Plaintiff's Exhibit 5.
The plaintiff used what he estimated to be 794 cubic yards of his own crushed stone from the pile in June 1989 in connection with the parking lot for the Viking Aluminum building. By October 6, 1992, there was no crushed stone remaining at the Commerce Park Road Connecticut site.
Mr. Barber assigned two drivers to do the gravel removal work They were Mitchell Day and Chancy Ross. These drivers kept a record of how many truck loads of crushed stone they hauled on any given day. At the end of a day on which they removed gravel, the drivers provided a slip of paper to Mr. Barber containing the number of truck loads taken for that day. Mr. Barber then recorded the amount taken and when the amount became sizable he processed it for payment. The tickets written out by the truck drivers were CT Page 8880 discarded after the information was conveyed to Mr. Barber and recorded on another document.
The evidence indicated that the gravel was removed by the town utilizing the town's payloader, frontloader and three trucks. The town had only two drivers and could only use two trucks at one time. The trucks had a capacity of six cubic yards without wooden boards placed on the side of the bed and eight cubic yards with sideboards. The evidence indicated that gravel could not be hauled during winter months because the trucks were needed to sand roadways.
The plaintiff was paid $19,056.00 by the town for the gravel removed.
From 1990 to 1993 the plaintiff visited the gravel site periodically. The plaintiff received checks from the town during 1990, 1991 and 1992, and notified the town of a dispute for the first time in July of 1993 at a time when taxes were owing on the property. See plaintiff's Exhibit 6.
Legal Analysis
Plaintiff of course bears the burden of proof as to his allegations by a preponderance of the evidence. As will be discussed in further detail below, plaintiff also bears the burden of proving losses and damages by this same standard. Gargano v.Heyman, 203 Conn. 616, 620 (1987). Mathematical exactitude is not required in proving damages. Hassane v. Lawrence,31 Conn. App. 723, 727 (1993). In cases where damages are difficult to prove, a plaintiff must prove damages with the precision which the facts permit, but no more. Johnson v. Healy, 183 Conn. 514, 515 (1981) If plaintiff fails to prove the allegations of his case, or to prove damages with sufficient certainty, plaintiff cannot prevail.
First and Second Counts
The First and Second Counts raise essentially the same legal issues and will therefore be discussed jointly.
As already stressed, it is elementary that the burden of proving his case rests solely on the plaintiff. And as already stressed, this applies as well to the burden of proving damagesUnited Aircraft Corporation v. International Association ofMachinists, 161 Conn. 79, 100 (1971). The plaintiff must offer CT Page 8881 sufficient evidence to prove not only that he was damaged, but to prove that the conduct of the defendant being sued caused the damages. The damages must be proven with sufficient specificity so the court will not have to speculate in making any awardWillametz v. Goldfield, 171 Conn. 622, 628 (1976); Bianco v.Floatex, Inc., 145 Conn. 523, 525 (1958). The court must have sufficient evidence before it to base a finding as to liability, as well as damages, not merely on speculation or surmise. Bronson andTownsend Company v. Battistoni, 167 Conn. 321, 326-27 (1974). Seealso, Gargano v. Heyman, 203 Conn. 616 (1987); Johnson v. Healy,183 Conn. 514 (1981); and Hassane v. Lawrence, 31 Conn. App. 723
(1993).
With these fundamental principles in mind, having reviewed the full record, I have concluded that plaintiff has failed to prove by a preponderance of the evidence that he was damaged as a consequence of the defendants' conduct. I also conclude, secondarily, that in any event, plaintiff has failed to prove his claimed damages with sufficient particularity to support an award of damages.
Essentially, plaintiffs claim boils down to an allegation that in excess of 10,000 cubic yards of crushed stone was located at the site; that Mr. Barber indicated that the town could use it all; that except for 794 cubic yards which plaintiff admits to using, only the town is known to have removed gravel; that the town failed to keep accurate records of what was removed; and that therefore the town must be presumed to have removed all of the missing stone. I reject plaintiffs argument for a number of reasons, as follows.
First of all, while plaintiff can account for the amount of gravel located on parcel 4 in late 1988, there is no similar accurate accounting for the amount of gravel on the site in the summer of 1990, when the oral agreement between plaintiff and Mr. Barber was reached. In the absence of more definitive proof, the Court cannot assume that the amount of gravel was the same-approximately 10,002 cubic yards — given the passage of time, the fact that the gravel was not fully protected, and the substantial, inherent difficulty of determining large gravel amounts with precision which is reflected in the evidence at trial. The weight of the evidence indicated that the barriers that Mr. Gurland put up could be moved by an individual. See testimony of Leo Wyzatecki, Tr., April 23, 1997, at 39-41; testimony of Mitchell Day, Tr., May 6, 1997, at 351-352; testimony of Chancey Ross, Tr., May 6, 1997, CT Page 8882 at 367. See also defendants' Exhibits A1 and A2. Moreover, the fact that Mr. Barber initially opined that the town could use the full amount of the gravel does not, as a matter of simple logic, mean that the town did in fact use the full amount. Whether or not the town removed the full amount of crushed stone is the very issue in dispute and the very thing plaintiff must prove to prevail.
Second, the claim that the records kept were not accurate is a circular argument. This argument translates into a claim that the records are not accurate because they do not fully document the full amount of crushed stone which plaintiff claims was taken by the town. But proof of this assertion requires proof that the town did, in fact, remove greater quantities than the amounts documented. Once again, this is the very issue in dispute. I conclude that such proof, by a preponderance of the evidence, is lacking.
There are a number of additional points which, when viewed collectively, tend to undermine the plaintiff's case.
Review of the full record does not establish that the town had a reasonable need for over 9,000 cubic yards of gravel, as plaintiff contends. See footnote 5, at pages 9-10 of defendant's August 1, 1997 brief. The evidence indicates that the town needed to use some quantity of gravel along the sides of Stockhouse Road and Brush Hill Road, and an amount along the sides of Bashin Hill and Caroline Roads, as well as at the transfer site. However, the record does not support the argument that the town had a use for the full amount of crushed stone which plaintiff claims was removed. The evidence did indicate, as already noted, that Mr. Barber stated in conversation with Mr. Gurland that the town could use the full amount. But this testimony, standing along, does not substitute for proof by plaintiff that the plaintiff has proven that the town did in fact remove the full amount.
Next, the evidence does not support the proposition that the town removed the total amount of gravel claimed during the time periods claimed. The evidence does not persuade me that the plaintiff has proven that the towns trucks removed amounts in excess of what was documented. See defendants' August 8 reply brief at pages 2-3.
In addition, there are some indications in the record that the plaintiff may have used some of the gravel from parcel 4 under the roadway. The collective testimony of Charles Zimbowski, Seymour CT Page 8883 Adleman, and Mr. Barber all suggest that gravel from parcel 4 was placed under the roadway. See, e.g., testimony of Charles Zimbowski, Tr. May 2, 1997 at 289; testimony of Seymour Adelman, Tr. May 2, 1997, at 320-321.[1]
Third Count
The gravamen of the Third Count is that Mr. Barber failed to honor his promise to keep "accurate" records, or "very accurate" records, regarding the removal of gravel by town employees, thereby causing loss to plaintiff. While this argument has some surface appeal, on examination, it is unpersuasive for the following reasons.
First of all, the term "accurate" is a relative one. What one person views as "accurate" may be viewed as entirely inadequate by another. A single piece of paper with hand-scratched notes can be more accurate than an elaborate computer printout, depending on the attendant facts and circumstances. Detail and elaboration do not necessarily translate into accuracy.
More fundamentally, however, Mr. Barber did maintain recordsSee Plaintiff's Exhibits 14 through 19; testimony of Raymond Barber, Tr. May 6, 1997, at 383-85. The record indicates that Mr. Barber assigned two drivers to periodically remove gravel Testimony of Raymond Barber, Mitchell Day and Chancey Ross Pursuant to Mr. Barber's direction, the drivers kept a record of how many truck loads they had removed on a given occasion Testimony of Mitchell Day., Tr. May 6, 1997, at 349-50; testimony of Chancy Ross, Tr. May 6, 1997, at 366. The testimony established that after removing crushed stone, the drivers gave a slip of paper to Mr. Barber indicating how many truck loads had been taken. Mr. Barber testified that after receiving the slips, he recorded what had been taken and that when an amount became large enough, he submitted it for payment. Testimony of Raymond Barber, Tr. May 2, 1997, at 253, 261-62; testimony of Raymond Barber, Tr. May, 1997, at 384-85, 386-388; Plaintiff's Exhibits 14-19.
Plaintiff argues that the records could have been more detailed. That is surely so. At no time, however, in spite of his concerns, did plaintiff demand that a particular type of record keeping procedure be used. To be sure, records were maintained somewhat informally. However, their informality alone does not translate into proof that they were inaccurate. Cf. Jacobs v.Healy-Ford Subaru, Inc. 231 Conn. 707, 725-28 1995). It is worth CT Page 8884 noting that plaintiff produced no expert testimony in support of; this claim or in support of the proposition that a particular type of record keeping was called for under the circumstances.
Plaintiff would have the Court draw a negative inference from the fact that the paperwork kept by the drivers, on which the number of loads was recorded, was destroyed. I decline to do so, and, in light of the testimony, reject any suggestion that this was somehow improper. Seymour Adelman testified that it is an acceptable practice in the gravel industry for a hauling company driver to discard such tickets after the information has been conveyed to its intended recipient and recorded on another document, and that this procedure was used by his company Testimony of Seymour Adelman, Tr. May 2, 1997, at 338-339. I credit Mr. Adelman's uncontradicted testimony on this point.
Finally, plaintiff points to certain alleged discrepancies in the record keeping and making of payments. See Plaintiff's July 28, 1997, Trial Brief at pages 8-11. Having reviewed the full record, I conclude that any problems that plaintiff claims to have existed were relatively minor anomalies that do not suffice to prove plaintiff's claim on this point.
In actuality, plaintiff's claim that the records were not accurately kept is a subcategory of his claim that the records that were kept did not accurately reflect the amount of gravel removed from the site. On review of the full record, I find that plaintiff has failed to prove by a preponderance of the evidence that Mr. Barber failed to accurately maintain the records as he said he would.
Summary and Conclusion
The troubling possibility exists that plaintiff has been deprived of proper payment for an undetermined amount of crushed gravel which he owned. But having considered the full record, I conclude that plaintiff has failed to prove the essential allegations in the complaint by a preponderance of the evidence with respect to the defendants against whom suit has been brought in this case. I conclude that plaintiff has failed to prove he was damaged as alleged. Moreover, the proof produced at trial was, in my view, too speculative to support an award of damages in any event. See, e.g., Rodney Davis Contractor, Inc. v. Sally R.Hungerford, judicial district of Middlesex at Middletown, Docket No. CV-95-0075933-S (June 4, 1996). Consequently, for the reasons CT Page 8885 stated above, judgment may enter for the defendants on all three counts of the amended complaint.
Douglas S. Lavine Judge, Superior Court