[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs are thirty-seven owners of property in a twenty-five lot, residential subdivision, known as Mountain Laurel Estates, located in South Windsor, Connecticut. In the first count of the amended complaint, these plaintiffs allege that the defendant Jack W. Kelly, II, had vinyl exterior siding installed when he had a new house constructed on his property, now known as 54 Greenwood Drive, which property lies within that subdivision. They further allege that restrictive covenants govern the subdivision, and those covenants prohibit vinyl siding. In the second count, one plaintiff, Roberta Ciechowski, alleges that she conveyed the 54 Greenwood Drive property to the defendant by warranty deed, which instrument contained a requirement that the defendant seek and obtain from her prior approval for the design of any residential construction on the property; that she gave such approval because she was led to believe, by the defendant, that no vinyl exterior siding would be used; and that the defendant breached this requirement by using this unapproved method of siding.
The plaintiffs seek injunctive relief and punitive damages. A claim for money damages was abandoned by the plaintiffs at trial. The trial was to the court on October 2, 2002. The court makes the following findings of fact and rulings of law.
In 1987, the subdivision land was owned by a partnership, Mountain Laurel Associates. The partnership issued a declaration of restrictive covenants and easements on July 30, 1987, which declaration was recorded on the South Windsor land records on April 11, 1988. The declaration applied uniformly to all lots within the subdivision. On October 31, 1989, the partnership recorded on the land records an amended declaration. The declaration, as amended, states, in pertinent part, that the restrictive covenants run with the land and encumber the twenty-five lots for a period of twenty-five years from the date of recording, with automatic, successive, ten year extensions thereafter, unless a majority of the lot holders agree to modify the restrictions. The avowed general CT Page 14444 purpose of the declaration is for "enhancing and protecting the value, desirability, and attractiveness of the land and every part thereof."
The declaration includes mandates as to minimum square footage of residence, maximum number of stories, minimum garage vehicle capacity, etc. As to building materials, the declaration in Item 4 states, "[I]t is the desire and intent of the Declarants to encourage the use of natural materials such as masonry, stone, brick, and wood siding on the exterior of all structures and the use of aluminum and vinyl siding is prohibited."
On August 28, 2001, Ciechowski conveyed lot 2 of the subdivision, now known as 54 Greenwood Drive, to the defendant by warranty deed which contained a provision indicating that the land was subject to the restrictive covenants described above. Additionally, the deed retained in Ciechowski "the right to approve the design and location of the single family residence to be constructed on said lot." At the closing, Ciechowski produced written approval for the proposed residence to be built by Mannarino Builders, Inc.
In the weeks before the closing, Ciechowski met a couple of times with either the defendant or his then fiancée to discuss the plans for the new home. Ciechowski was given a complete copy of the proposed plans and specifications for her perusal. Ciechowski chose to examine only the exterior design. The specifications indicated that the exterior covering would be partly brick and partly vinyl siding. Ciechowski failed to read or notice that specification. Despite contested testimony on this issue, the court finds that neither the defendant nor his betrothed told Ciechowski that no vinyl siding would be used nor that the house would be entirely clad in brick.
On August 28, 2001, the date of the closing, the defendant knew that the land he was purchasing was burdened by the declaration of restrictive covenants. Both the bond for deed and the warranty deed referenced that declaration explicitly. The defendant claims that, while he knew that the lot was subject to restrictive covenants, he never checked to ascertain the specifics set forth in the declaration.
Assuming, arguendo, that the defendant was unaware of the specific restrictions, that ignorance is inconsequential. In the absence of accident, misrepresentation, or mistake, a party may not escape contractual obligations by asserting a failure to read the specific terms of the contract which the party entered. EF Construction Co. v. RissilConstruction Assoc., Inc., 181 Conn. 317, 321 (1980); Batter BuildingMaterials Co. v. Kirschner, 142 Conn. 1, 7 (1954). The defendant has CT Page 14445 neither pleaded nor proven any lawful excuse for his failure to read the terms of the restrictive covenants applicable to his land.
In the fall of 2001, during the framing phase of construction of the defendant's new house, his builder learned that the property was subject to the restrictive covenants barring the use of exterior, vinyl siding. The builder promptly contacted the defendant and related this impediment to him. The defendant told the builder that he would get back to him as to the next step to take. At that time, the builder could easily have altered the framing to accommodate wood rather than vinyl siding at some added expense.
At this point, the defendant indisputably knew that the restrictive covenants which governed construction of a house on his land forbade the use of vinyl siding. The defendant's pleadings impliedly admit as much because the defendant never denied, in his answer, allegations in paragraph 26 and a portion of paragraph 27 which averred that the defendant possessed this knowledge. Under Practice Book § 10-19, the defendant's knowledge of the prohibition against vinyl siding before installation is deemed admitted.
Sometime thereafter, the defendant communicated to his builder that he made an "executive decision" and instructed the builder to continue with the plan to install vinyl siding despite the existence of the restrictive covenants. He told the builder that he made this decision because the current quality of vinyl material matched that of wood in appearance, was cheaper to buy and install, and cheaper to maintain. The defendant opined that, once installed, the neighbors would find the vinyl siding unobjectionable. The builder followed the instructions and proceeded so as to install the vinyl siding.
The defendant predicted poorly. The plaintiffs, who all own residences on lots within the subdivision, noticed that vinyl siding was being employed and retained legal counsel to stop its use. On January 17, 2002, the plaintiffs, through counsel, mailed a cease and desist letter to the defendant and his builder. The builder suspended installation until he received word from the defendant as to the defendant's intentions. At that time, conversion from vinyl to wood siding, including painting, would have cost around $5,800.
Also on January 17, 2002, the plaintiffs commenced this action seeking both a temporary and permanent injunction. After a hearing on February 25, 2002, the court, Levine, J., denied the application for temporary injunction. Despite the pendency of this action and the cease and desist letter, the defendant, upon receipt of Judge Levine's decision, directed CT Page 14446 his builder to complete the installation of the vinyl siding. In March 2002, construction of the house was completed. The cost to convert the installed vinyl siding to wood siding at this point is around $15,000.
The subdivision is part of an upscale, residential neighborhood. The defendant's home cost $650,000 and is comparable in value to other homes in the subdivision. It is undisputed that the defendant's property is subject to the declaration of restrictive covenants. The defendant does contend, however, by way of special defenses, that his use of vinyl siding is compatible with the restrictive covenants; that changed circumstances render the vinyl siding prohibition archaic and unenforceable; and that it would be inequitable and disproportionate to require the removal of the vinyl and residing of the house. The court rejects these contentions and defenses.
 I
The defendant claims that his home satisfies the announced purposes of the restrictive covenants because his house is attractive, his property well maintained, and vinyl siding is less prone to deterioration compared to wood which can rot and needs occasional repainting. It is said that beauty is in the eye of the beholder. Under the defendant's analysis, any and all specific terms of the restrictive covenant can be ignored if the result is aesthetically pleasing and neighborhood property values are unaffected. This approach renders the declaration nugatory.
The defendant's argument fails to recognize that the declaration itself defines what is and is not aesthetically and economically satisfactory. What the court or others may think of the merits of vinyl siding is immaterial. The declarant chose to impose certain standards, and those who purchased or would purchase within the subdivision have the right to expect that the announced standards will be maintained. Those who have other views of Eden are free to reside elsewhere. Where the terms of a restrictive covenant have specified and expressly defined meanings, such particularized meanings and definitions will control. Southbury Land Trustv. Andricovich, 59 Conn. App. 785, 789 (2000).
 II
The defendant also argues that because the quality of vinyl siding has improved significantly since 1987 and because other lot owners have breached other restrictions under the declaration, circumstances have changed rendering the vinyl siding prohibition archaic and unenforceable. The court disagrees that changes have occurred which warrant the disregard of the restrictive covenant. CT Page 14447
 A.
First, the court finds no evidence of widespread or frequent disobedience or repudiation of the restrictive covenants in this case. The defendant points to the fact that some of the plaintiffs have erected satellite dishes which are proscribed by Item 6 of the declaration. However, proscriptions contained in restrictive covenants regarding satellite dishes have been preempted by federal law and regulation. Section 207 of the Telecommunications Act of 1996 and47 C.F.R. § 1.4000. for satellite dishes less than one meter in diameter. Consequently, the homeowners have no legal obligation to eschew installation of such devices. Id.
The defendant also asserts that some homeowners within the development have kept firewood stored outdoors in purported violation of Item 12 of the declaration. That restriction forbids the "accumulation" of firewood but not firewood per se. It is debatable whether the stocking of moderate amounts of firewood offends this mandate. In any event, the evidence discloses that any incidences of firewood storage have been isolated and transitory.
The defendant further notes that one homeowner erected a chainlink fence, which the defendant contends violates the requirement that "structures" be of masonry, brick, or wood. Again, whether "structure" includes fencing or not is ambiguous under the declaration. Even if a chainlink fence violates the declaration, it is an isolated breach and fails to establish that the circumstances surrounding this subdivision are so altered so as to vitiate the effectiveness of the restrictive covenants in achieving their announced goals.
 B.
As to the defendant's contention that the improvement in the quality of vinyl siding since 1987 constitutes such a change as to warrant turning a blind eye upon the defendant's intentional refusal to adhere to the express terms of the restrictive covenants, the court finds that no such substantial change in circumstances has arisen. While the quality of vinyl siding has improved in strength, durability, and resemblance to wood, this argument misses the point. As noted above, the declaration defines vinyl siding as inferior.
A reproduction of an antique chest of drawers may be so skillfully crafted that it is equivalent in appearance and superior in that it lacks wear, and yet the value, aesthetic and monetary, of the antique may CT Page 14448 surpass the reproduction for some buyers. The plaintiffs' opinions as to the desirability of wood siding over vinyl may be subject to debate, however, they are entitled to rely upon the existence of the prohibition of the use of vinyl which comes with purchase of property within the subdivision.
A change in circumstances where events transpire uncomtemplated by the declarant may justify nonenforcement of restrictive covenants. ShippenPoint Assoc., Inc. v. McManus, 34 Conn. App. 209, 215 (1994). But, "the test is whether the circumstances show an abandonment of the original restriction making enforcement inequitable because of the altered condition of the property involved." Id. In the present case, the court finds no abandonment of the restrictions regarding exterior siding.
The defendant has the burden of demonstrating that the evolution of vinyl siding since 1987 is such that there no longer exists any benefit to banning its use. Grady v. Schmitz, 16 Conn. App. 292, 302 (1988). Several plaintiffs still prefer wood over vinyl siding. No other house in the subdivision uses vinyl siding. The fact that vinyl siding may have acquired economic advantages over wood siding is of no consequence. Id.
Additionally, the declaration contemplated that tastes and needs may change. The declaration contains a mechanism to modify the restriction. Item 13 allows a majority of the lot holders to alter the restrictions after twenty-five years. The defendant has failed to prove that the improvement in building materials was uncontemplated by the declarant.
 III
With respect to the defendant's remaining claims, it should be noted that restrictive covenants are enforceable by injunction without the need to prove irreparable harm. Manley v. Pfeiffer, 176 Conn. 540, 544
(1979); Hartford Electric Light Co. v. Levitz, 173 Conn. 15, 22 (1977). This exception to the usual requirement of showing irreparable injury before injunctive relief will issue does not mean the court ignores the equities involved, however. Id. An injunction is an equitable remedy, and, when confronted with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless enforcement would be inequitable. Castonguay v. Plourde, 46 Conn. App. 251, 268 (1997).
In the present case, the declarant uniformly instituted these restrictive covenants throughout the subdivision pursuant to a general development scheme. Under such a scheme, any grantee may enforce the restrictions against any other grantee. Mannweiler v. LaFlamme,46 Conn. App. 525, 535 (1997). This equitable right "springs from the CT Page 14449 presumption that each purchaser has paid a premium for the property in reliance on the uniform development plan being carried out." Id., 535-536. It is inequitable to permit one landowner, governed by the restrictive covenants, to violate them. Id.
The defendant argues that it would be unfair and disproportionate to compel him to expend significant sums of money to remove and replace the vinyl siding. The court disagrees.
The defendant stresses his belief that his property is attractive and well kept as it is, so that the presence of vinyl siding has minimal impact, if any, on his neighbors' property values and enjoyment. The right to enforce the terms of a restrictive covenant are not contingent on the diminution in property value if the violation remains unabated.Bickell v. Moraio, 117 Conn. 176, 182 (1933).
In this case, the defendant wrongfully and willfully elected to install the expressly forbidden material despite being alerted by his builder in the fall of 2001 that the use of vinyl siding was prohibited. The defendant received additional warning, by virtue of conversations with neighbors, the cease and desist letter, and the commencement of this action, of the potential consequences of continuing construction with vinyl siding during the incipiency of its installation. His decision to proceed was deliberate and calculated. By his own testimony, he stated that he assumed that, once the installation was complete, his neighbors would come to his way of thinking.
When one wilfully breaches restrictive covenants, the offended lot holders are entitled to have the provisions enforced "even though the wrongdoer would thereby suffer great loss." Gino's Pizza of EastHartford, Inc. v. Kaplan, 193 Conn. 135, 139 (1984). The defendant should obtain no benefit from his own misdeeds. Id.
Several other lot holders in this subdivision found the exclusion of vinyl siding to be an important factor in deciding to purchase and reside there. No other property owner has flouted this restriction. The likely cost to rectify the situation, around $15,000, is a self-inflicted expense which the defendant had the knowledge and power to avoid or at least minimize. The court concludes that it is neither inequitable nor disproportionate, under the facts of this case, to require that the defendant comply with the restrictive covenants.
Therefore, as to the first count, the court decides for the plaintiffs against the defendant and enjoins and orders the defendant to remove the vinyl siding from his house at 54 Greenwood Drive, South Windsor, and CT Page 14450 replace it with materials permitted under the restrictive covenants by May 31, 2003. The defendant will be fined $100 per day for each day thereafter that the house is in noncompliance with the restrictive covenants.
 IV
In the second count of the amended complaint, Ciechowski claims that the defendant violated a provision in the warranty deed which conveyed lot 2 to the defendant by constructing his house using exterior vinyl siding without her knowledge and approval. The court finds that Ciechowski has failed to prove this claim.
As noted above, the defendant allowed Ciechowski ample opportunity to scrutinize his design plans and specifications. These plans disclosed that the house would be partly clad with vinyl siding, although Ciechowski declined to peruse the plans and specifications fully. Neither the defendant nor his fiancée intentionally or negligently misled Ciechowski into her assumption that no vinyl siding would be used or that the house would be entirely sided in brick. The court decides the second count in favor of the defendant.
 V
The plaintiffs seek punitive damages for the defendant's wilful violation of the restrictive covenants. Awarding punitive damages is discretionary. Punitive damages may be warranted where evidence reveals an intentional violation of the rights of others. Gargano v. Heyman,203 Conn. 616, 622 (1987). However, the "flavor" of such an award is "described in terms of wanton and malicious injury, evil motive and violence." Id.
In the present case, while the defendant intentionally breached the restrictive covenants, the court finds that, in doing so, the defendant had no intent to cause injury to his neighbors. Also, no evidence was adduced that any plaintiff suffered any monetary loss as a result of the defendant's delict. Finally, the defendant will incur substantially greater expense to remove and replace the vinyl siding now than if he had complied with the restriction at the onset. In other words, the defendant's recalcitrance contained its own escalating punishment. No further remedy is necessary to achieve the goal of making of him an example to others who would contemplate similarly misguided conduct. The court declines to award punitive damages.
Sferrazza, J. CT Page 14451
[EDITORS' NOTE: This page is blank.] CT Page 14452