JOHN BURR *v.* ALEXANDER LICHTENHEIM ET AL.
(11080)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued April 8—decision released June 14, 1983

*John J. Graubard,* for the appellants (defendant Paul R. Daddona et al.).

*Lawrence M. Lapine,* for the appellee (plaintiff).

PETERS, J. This is a suit to recover damages for breach of an indemnity agreement. The plaintiff, John Burr, brought an action against the defendants Alexander Lichtenheim and Katherine Lichtenheim (the Lichtenheims) for tortious interference with a contract and for abuse of process and against the defendants Paul R. Daddona, Anthony M. Daddona and Biase Daddona (the Daddonas) for breach of an indemnity contract. The various counts against the two groups of defendants were tried separately. On the Lichtenheim counts, the trial court on one count and a jury on the other found the issues for the defendants. On the Daddona count, summary judgment as to liability having previously been rendered against the defendants, a jury found for the plaintiff, awarding him damages of $40,000 to which the trial court added $6000 as reasonable attorney's fees. After unsuccessful motions to set aside the verdict and for a new trial, the Daddonas have taken the present appeal which contests only the award of damages and not the prior summary judgment as to liability.

The underlying facts, which are undisputed, indicate that, on December 5, 1975, the plaintiff Burr bought certain property in Stamford from the defendants Daddona for $20,000. At that time, the Lichtenheims had a recorded right of first refusal with respect to the property. At the closing, in lieu of a release from the Lichtenheims, the plaintiff received an indemnity agreement by which the Daddonas agreed to hold him harmless "from any and all liabilities and expenses and damages incurred in connection with any action or proceeding brought to enforce Alexander Lichtenheim's and Katherine Lichtenheim's first refusal rights, if any, on the parcel of property conveyed to the grantee, John Burr, on this date, December 5, 1975."

The contingency contemplated by the indemnity agreement came to pass when the Lichtenheims, in September, 1976, brought an action seeking specific performance to enforce their right of first refusal. In conjunction with that litigation, they recorded a lis pendens on the plaintiff's property. The Lichtenheim lawsuit ultimately terminated in a judgment against the Lichtenheims in March, 1979. In the meantime, however, the plaintiff had initiated the present lawsuit in November, 1976.

In their appeal from the adverse judgment in damages, the defendants have raised four issues. The defendants claim that the trial court erred: (1) in refusing their motion for a new trial on the basis of newly discovered evidence; (2) in permitting the jury, as a matter of law, to consider the plaintiff's claim of lost profits; (3) in permitting the jury to conclude, as a matter of fact, that the plaintiff had proven lost profits; and (4) in awarding the plaintiff the attorney's fees incurred in enforcing the indemnity agreement. We find error only with respect to the award of attorney's fees.

I

The defendants' claim of erroneous denial of their motion for a new trial on the basis of newly discovered evidence is premised on the following events. During the jury trial of the damages issue in the present case on June 2, 1981, the plaintiff was asked on cross-examination about the extent of his knowledge of the Lichtenheim interest in his property. He testified that, some time in the summer of 1976, in advance of the initiation of the Lichtenheim suit for specific performance, he had spoken with Mr. Lichtenheim. While the plaintiff was at work clearing his land, Mr. Lichtenheim had come over, and the two men had had a conversation. The plaintiff did not recall what

Lichtenheim had said. Several days later, while the jury was deliberating in the present case, a companion case, *Daddona* v. *Lichtenheim,* was being tried to the court. In the companion case, on June 4, 1981, the plaintiff testified, as the Daddonas' witness, about the same conversation, and then recalled that Mr. Lichtenheim had claimed to own the property. Thereafter, the jury returned its verdict in the plaintiff's favor in the present case. The defendants promptly filed a motion for a new trial under § 320 of the Practice Book.

Any motion for a new trial is addressed to the sound discretion of the trial court and will not be granted except on substantial grounds. *Bernier* v. *National Fence Co.,* 176 Conn. 622, 628, 410 A.2d 1007 (1979). When the asserted ground for the motion is newly discovered evidence, we have repeatedly relied on the statement of principles in *Turner* v. *Scanlon,* 146 Conn. 149, 148 A.2d 334 (1959), where we held (p. 163) that "[a] party is entitled to a new trial on the ground of newly discovered evidence if such evidence is, in fact, newly discovered, will be material to the issue on a new trial, could not have been discovered and produced, on the trial which was had, by the exercise of due diligence, is not merely cumulative and is likely to produce a different result. . . . This rule is necessary, for without it there might never be an end to litigation. . . . New trials are not granted upon newly discovered evidence which discredits a witness unless the evidence is so vital to the issues and so strong and convincing that a new trial would probably produce a different result. . . . The basic question which the trial court has to decide is whether upon all the evidence an injustice had been done. In deciding this question, the court has the exercise of a sound legal discretion, and its action cannot be disturbed unless this discretion has been abused." (Citations omitted.) See

*Lombardi* v. *Bockholdt,* 167 Conn. 392, 395, 355 A.2d 270 (1974); *Pass* v. *Pass,* 152 Conn. 508, 511–12, 208 A.2d 753 (1965).

The defendants' claim cannot survive scrutiny under the test laid down by *Turner* v. *Scanlon.* While the defendants have demonstrated that the evidence upon which they rely "could not have been discovered and produced, on the trial that was had, by the exercise of due diligence," unavailability of evidence is not, in and of itself, sufficient to require a new trial. On the facts before it, in a hearing limited to the ascertainment of damages, the trial court might reasonably have concluded that the content of the conversation between the plaintiff and Mr. Lichtenheim was not of vital significance. Even if the discrepant versions of the plaintiff's recollection of this conversation could be taken as reflecting adversely on the plaintiff's credibility in general, the trial court might reasonably have concluded, in light of the extensive documentary record in this case, that a new trial would probably not have produced a different result. The defendants have not established an abuse of discretion in the denial of their motion for a new trial.

## II

The defendants' second and third claims of error, because they address different facets of the plaintiff's recovery of damages for loss of profits, can conveniently be addressed together. In the defendants' motion to set aside the verdict, they maintained that it was error to submit the issue of lost profits to the jury because (1) the indemnity agreement did not obligate the defendants to reimburse the plaintiff for lost profits and (2) the proof offered by the plaintiff did not substantiate his claim for lost profits with reasonable certainty.

The defendants' first claim requires interpretation of the terms of the indemnification agreement, particularly of its language, "any and all liabilities and expenses and damages incurred in connection with any action or proceeding brought to enforce [the Lichtenheims'] first refusal rights . . . ." In this regard, the defendants submitted to the trial court two alternate requests to charge. The defendants' "preferred" charge asked the court to determine the question of the construction of the contract as a matter of law. This charge the court refused to give. The defendants' alternate charge, which the trial court gave, left it to the jury to determine whether the agreement was intended to cover not only expenses directly incurred by the plaintiff in defending against the action brought by the Lichtenheims but also covered "any loss which he might sustain as a result, direct or indirect, of the bringing of such action."[1]

The plaintiff argues that we need not consider this claim of error since it is conceded that the charge as given was one that the defendants had themselves re-

---

[1] The trial court's instructions to the jury included the following:

"The Plaintiff, John Burr, cannot recover in this action any damages that are not included within the scope of [the indemnity] agreement. If John Burr has sustained a loss, but this was not a loss that the Daddonas agreed to compensate him for, you cannot award Mr. Burr any damages for such loss.

"In the indemnity agreement sued upon in this action, the Defendants, the Daddonas, agreed to indemnify the Plaintiff John Burr from 'liabilities and expenses and damages incurred in connection with any action or proceeding brought to enforce' certain claimed rights of first refusal. You, the Jury, must determine the scope of this obligation. The Daddonas claim that this language limits their obligations to the costs and expenses of John Burr in the defense of the action brought by the Lichtenheims to enforce their claimed rights. The Plaintiff, Mr. Burr, claims that the agreement covered not only these expenses, but also any loss which he might sustain as a result, direct or indirect, of the bringing of such action. It is for you to determine the terms of the agreement between the parties, what was intended by the use of the language."

quested. There would be merit in this argument if the record evidenced any confusion in the trial court with regard to the defendants' two requests. The record shows, to the contrary, that the defendants clearly articulated their views about the interpretation of the contract to the trial court. They stated their requests in the alternative, and reiterated their position in timely objections to the charge as given. In these circumstances, we can see no reason why the defendants, having consistently although unsuccessfully pursued their claim of law in the trial court, should be foreclosed from appellate review of that claim simply because they chose to assist the trial court in its formulation of the issue of fact. Procedurally, this claim is properly here.

Turning then to the merits of the defendants' claim, we must decide whether the trial court erred in permitting the jury to determine, as a matter of fact, whether the contract of indemnity excluded recovery for loss of profits. The defendants argue that, as a matter of law, this indemnity contract excluded such a recovery. The defendants note that an indemnity agreement, like any other contract, must be construed to effectuate the intent of the contracting parties, and that, in ascertaining that intent, it is appropriate to look to the language of the agreement interpreted in light of the situation of the parties and the circumstances connected with the transaction. *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 598, 424 A.2d 277 (1979); *Powel* v. *Burke,* 178 Conn. 384, 387, 423 A.2d 97 (1979). In accordance with these principles of construction, the defendants argue that the agreement's broad language covering "any and all liabilities and expenses and damages" is severely restricted by the subsequent clause requiring all such expenses to have been "incurred in connection with" any action brought by the Lichtenheims. In their view

a reasonable construction of the agreement limits its coverage to the costs of defense of any litigation and excludes other consequential damages such as lost profits.

Even if we were to concur that the defendants' argument offers a reasonable construction of the language of the indemnity agreement, such concurrence would not demonstrate error on the part of the trial court unless there were no other reasonable construction, which a jury might find equally or more compelling. The plaintiff contends that the circumstances surrounding the negotiation of the indemnity agreement support a more expansive reading of its language, particularly of its express incorporation of coverage for "damages" as well as "liabilities and expenses."

The circumstances connected with the negotiation of the indemnity agreement were, as the evidence at the trial showed, that the plaintiff purchased the property at issue with the manifested intention of subdividing the property. The plaintiff intended to build a residence on one lot, for resale, and to sell the other lot immediately, essentially in its unimproved state. To that end, and with the defendants' knowledge, the plaintiff had procured building plans, a subdivision application and subdivision approval in advance of the closing. When the Lichtenheims' recorded right of first refusal was discovered, and the defendants indicated their inability to procure a release, the indemnity agreement was drafted to minimize the risk that exercise of the Lichtenheims' rights would jeopardize the plaintiff's project.

This evidence was unchallenged and uncontradicted. On this record, it was a reasonable interpretation of the contract that the parties, although limiting their contract to losses causally related to, and hence "in-

curred in connection with" Lichtenheim litigation, intended to provide coverage for indirect as well as for direct consequences of such litigation. The trial court was therefore not in error in allowing the jury to determine whether the terms of the indemnity agreement permitted recovery of lost profits.

We turn now to the defendants' claim that even if the plaintiff were potentially entitled to recover for loss of profits, he had failed to prove his actual damages with sufficient certainty to permit the issue of lost profits to be submitted to the jury. The jury were charged that such damages could be awarded only if the jury could find "with reasonable certainty what the profits probably would have been."[2] This charge accurately reflected our consistent holdings that, although lost profits are not recoverable unless they are reasonably certain to result from the breach of the contract, mere uncertainty as to the amount of lost profits may be dispelled by the same degree of proof as is required in other civil actions, that is, the amount may be determined approximately upon reasonable inferences and estimates. *Gordon* v. *Indusco Management Corporation*, 164 Conn. 262, 274, 320 A.2d 811 (1973); *Tompkins, Inc.* v. *Bridgeport*, 94 Conn. 659, 685, 110 A. 183 (1920); *Bridgeport* v. *Aetna Indemnity Co.*, 91 Conn. 197, 204, 99 A. 566 (1916); see also 3 Restatement (Second), Contracts § 352 (1981); Dobbs, Remedies § 3.3, esp. pp. 150–157 (1973).

To establish his claim for lost profits, the plaintiff necessarily had to prove the injurious effects of impair-

---

[2] The defendants take no exception to the wording of this charge. As was the case with regard to the interpretation of the contract as to coverage for lost profits, the defendants presented alternate requests for charge on proof of lost profits, their preferred form asking that the issue be removed from the jury and the alternate form, which the trial court gave, charging in the language stated.

ment of his property rights during the period from September, 1976 to March, 1979. This is the relevant time frame for it demarcates the time when, pursuant to the prosecution of the Lichtenheims' lawsuit, their lis pendens on his property was recorded on the land records. The defendants do not challenge the plaintiff's assertion that this cloud on his title made it impossible, during this period, either to sell his property or to obtain a mortgage so that he could build upon it.

In order to quantify with reasonable certainty the profits that the plaintiff probably would have made had the lis pendens not put his property "on ice" for two and one-half years, the plaintiff introduced evidence of two types. With respect to the lot that he had earmarked for resale, he introduced, as an exhibit, a contract for sale of that property for $25,000, subject to the contingency that the lis pendens could be removed by September 15, 1977. Since the lis pendens remained on the land records beyond the appointed day, this resale contract became null and void. With respect to the lot for which building plans had been prepared, the plaintiff introduced expert testimony that he might reasonably have expected to make a profit of $23,000 to $25,000 had he been able to build in 1976. In the years that intervened, however, changes in prevailing environmental standards so restricted construction along the Rippowam River, which the plaintiff's property abutted, that, according to expert testimony, the plaintiff's entire property was now probably unbuildable and probably worth, in its totality, no more than $15,000.

On this appeal, the defendants do not contest the admissibility of any of this evidence. They baldly assert in their brief that the plaintiff's land is today worth several times the amount he paid for it in 1975, but cite nothing in the transcript to support this assertion. The

aborted contract of resale stands unchallenged. That there was a change in environmental regulations also stands unchallenged. The defendants focus primarily on the form in which the plaintiff's experts testified about the impact of these regulations on the plaintiff's use of his property, taking particular issue with the expert's assessment of that impact in terms of probabilities rather than of absolute certainties. They add finally that the plaintiff's claim for an allowance of lost profits is inherently speculative because, for this plaintiff, land development was a new business venture.

We conclude, as did the trial court which refused to set aside the jury's verdict, that the defendants' various caveats go only to the weight of the evidence offered by the plaintiff and therefore do not preclude the plaintiff's recovery. Once the jury found that the defendants had undertaken to indemnify the plaintiff for his lost profits, they could readily have found that the Lichtenheim litigation substantially impaired the plaintiff's intended use of the property and could reasonably have found the evidence sufficiently certain to award damages to compensate for that impairment. Unlike *Doeltz* v. *Longshore, Inc.,* 126 Conn. 597, 601, 13 A.2d 505 (1940), on which the defendants rely, lost profits in this case were neither remote nor uncontemplated by the terms of the parties' bargain. The defendants do not claim that the jury's verdict was improper if the issue of lost profits was properly before them.[3] The jury's award of $40,000 in damages to the plaintiff must therefore stand.

## III

The defendants' final claim of error is that the trial court should not have awarded the plaintiff the

[3] Although the motion to set aside the verdict charged that the verdict was against the evidence and excessive in amount, those claims have not been pursued upon this appeal.

attorney's fees that he incurred in the present action to enforce the indemnity agreement. The issue is not the recoverability of counsel fees associated with the Lichtenheim litigation. Rather, the question is whether the plaintiff may recover counsel fees in this lawsuit brought to establish the plaintiff's right to indemnification. Only the principle itself is being contested, the parties having stipulated that, if such fees were recoverable, a reasonable amount was $6000. The parties also agreed that this issue was to be determined by the trial court rather than by the jury.

This court has not previously determined the availability of attorney's fees to enforce a contractual indemnity.[4] The general rule is that, in the absence of express contractual terms to the contrary, allowance of fees is limited to the defense of the claim which was indemnified and does not extend to services rendered in establishing the right to indemnification. *Vallejos* v. *C. E. Glass Co.,* 583 F.2d 507, 510 (10th Cir. 1978); *Flunker* v. *United States,* 528 F.2d 239, 246 (9th Cir. 1975); *General Electric Co.* v. *Mason & Dixon Lines, Inc.,* 186 F. Sup. 761, 762–66 (W.D. Va. 1960); *Sendroff* v. *Food Mart of Connecticut, Inc.,* 34 Conn. Sup. 624, 626, 381 A.2d 565 (1977); *Howard P. Foley Co.* v. *Employers-Commercial Union,* 15 Ariz. App. 350, 353, 488 P.2d 987 (1971); *Celotex Corporation* v. *Becknell Construction, Inc.,* 325 So. 2d 566, 568–69 (Miss. 1976); *Missouri Pacific R. Co.* v. *Rental Storage & Transit Co.,* 524 S.W.2d 898, 912 (Mo. App. 1975); *Scherf* v. *Myers,* 258 N.W.2d 831, 836 (S.D. 1977); *Jones* v. *Strom Construction Co.,* 84 Wash. 2d 518, 523, 527 P.2d

---

[4] In actions for indemnity based upon the common law obligation of a tortfeasor; *State* v. *Bloomfield Construction Co.,* 126 Conn. 349, 359, 11 A.2d 382 (1940); or upon a statutory obligation to reimburse legal fees; *Link* v. *Shelton,* 186 Conn. 623, 632, 443 A.2d 902 (1982); we have disallowed claims for attorney's fees arising out of enforcement of the right to indemnification.

1115 (1974). Courts have relied on encompassing language in the indemnity contract, usually specifically referring to attorney's fees, to find an express agreement to the contrary. *Montgomery Ward & Co.* v. *Wetzel,* 98 Ill. App. 3d 243, 253, 423 N.E.2d 1170 (1981); *Chetopa State Bancshares, Inc.* v. *Fox,* 6 Kan. App. 2d 326, 334, 628 P.2d 249 (1981); *Hartford Accident & Indemnity Co.* v. *Maus, Pyle,* 266 Or. 502, 504, 514 P.2d 61 (1973); *Hammond* v. *Travelers Indemnity Co.,* 553 S.W.2d 205, 206 (Tex. Civ. App. 1977).

Examination of the indemnity agreement in this case makes it clear that it falls within the general rule rather than within the exception. The agreement makes no reference to attorney's fees and limits its scope to "expenses . . . incurred with any action brought to enforce [the Lichtenheims'] first refusal rights." This language allows no reasonable interpretation other than that attorney's fees would be limited to defense of the original action. The trial court's holding to the contrary was therefore in error.

There is error in part; the judgment is set aside and the case is remanded with direction to enter judgment for the plaintiff modified by the elimination of the item of $6000 allowed as attorney's fees.

In this opinion the other judges concurred.