[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT WILLIAM A. G. MACKEY'S POST-TRIAL MOTIONS
In this action, the plaintiff, Thomas D. Lee, recovered a verdict in the amount of $300,000 against the defendants, his former employer, Axiom Laboratories, Inc. (Axiom), and his former boss, William A.G. Mackey, on May 1, 2000.[1] While Axiom was named in all five counts of the plaintiff's complaint, Mackey was included in only counts four and five. The jury returned a plaintiff's verdict against Axiom Laboratories as to the first (breach of contract), second (covenant of good faith and fair dealing), third (promissory estoppel) and fifth (negligent misrepresentation) counts of the complaint, a plaintiff's verdict against Mackey as to the fifth count and a defendants' verdict as to count four (vacation pay).
Pursuant to Practice Book § 16-37, the defendants timely moved to set aside the verdict and for judgment notwithstanding the verdict in accordance with their motion for directed verdict. In the alternative, the defendants moved, pursuant to Practice Book § 16-35, (1) for a CT Page 1372 new trial on the grounds that (a) the verdict was against the weight of the evidence, (b) the court erred in allowing the plaintiff's motion in limine to exclude evidence of his failure to file tax returns, (c) the court erred in denying the defendants' motion in limine and allowing evidence of emotional distress damages to be presented to the jury, (d) the court erred by allowing evidence, argument and a jury charge of reputation damage, and (e) the court erred by denying the defendants' objections to the testimony of Mackey's ex-wife and their motion to strike such testimony; or (2) for remittitur or a new trial on damages.
Subsequent to the filing of these motions, Axiom filed for bankruptcy. At a hearing held on September 18, 2000, counsel for the parties represented to the court that the bankruptcy judge granted permission for judgment to enter against Axiom. (Transcript, September 18, 2000, p. 3.) Subsequently, the court, Peck, J., entered judgment against Axiom on October 27, 2000. Accordingly, the court denies the motion with respect to counts one, two, three and five as to the defendant Axiom. What remains then are the defendant Mackey's motions with respect to count five of the plaintiff's complaint.
 I MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
"[A] motion [for judgment notwithstanding the verdict] should be granted if the evidence establishes, as a matter of law, that the party who had obtained the verdict could not and was not entitled to prevail.Gesualdi v. Connecticut Co., 131 Conn. 622, 627 [41 A.2d 771 (1945)];Yeske v. Avon Old Farms School, 1 Conn. App. 195, 206 [470 A.2d 705
(1984)]. When considering the motion, the evidence [including reasonable inferences] must be given the most favorable construction in support of the verdict as is reasonably possible. Aksomitas v. Aksomitas,205 Conn. 93, 100 [529 A.2d 1314 (1987)]. When a verdict is challenged because of a lack of sufficient evidence, the issue raised is whether the trier of fact could reasonably have concluded, upon facts established and inferences permissibly drawn from them, that the cumulative effect of the evidence warranted the ultimate finding made. Coelho v. Posi-SealInternational, Inc., 208 Conn. 106, 112 [544 A.2d 170 (1988)]; Jonap v.Silver, 1 Conn. App. 550, 559 [474 A.2d 800 (1984)]." (Internal quotation marks omitted.) Craine v. Trinity College, Superior Court, judicial district of Hartford, Docket No. 555013 (December 27, 1999, Peck, J.);Foley v. The Huntington Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 246145 (March 18, 1994, Fuller, J.); see also Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 32,761 A.2d 1268 (2000) ("The verdict will be set aside and judgment directed only if . . . the jury could not reasonably and legally have CT Page 1373 reached their conclusion.") (Internal quotation marks omitted.)
In support of his motion for judgment notwithstanding the verdict, Mackey argues that he cannot be held individually liable for negligent misrepresentation based on the evidence as presented or under Connecticut law and further that there was insufficient evidence at trial of the elements of negligent misrepresentation. Lee argues, in response, that there is individual liability under Connecticut law for negligent misrepresentations made by a corporate officer even though acting in his official capacity. The plaintiff further contends that he has presented evidence sufficient to support his claim of negligent misrepresentation.
"[Our Supreme Court] has long recognized liability for negligent misrepresentation." (Internal quotation marks omitted.) Burnham v. Karl Gelb, P.C., 50 Conn. App. 385, 390, 717 A.2d 811 (1998), aff'd,252 Conn. 153, 745 A.2d 178 (2000). "[The court has] held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." (Internal quotation marks omitted.) Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 575, 657 A.2d 212 (1995). "The governing principles are set forth in . . . § 552 of the Restatement Second of Torts (1979): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Internal quotation marks omitted.) Burnham v. Karl Gelb, P.C., supra, 50 Conn. App. 390.
There is no Connecticut appellate authority with regard to the specific issue of whether an officer of a corporation can incur personal liability for negligent misrepresentation. "It is . . . true that an officer of a corporation does not incur personal liability for its torts merely because of his official position. Where, however, an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." Scribner v. O'Brien, Inc., 169 Conn. 389, 404,363 A.2d 160 (1975) (an agent and an officer can be liable for negligence in the construction of improvements subject to a contract by the principal).
Relying on Scribner v. O'Brien, Inc., Connecticut courts have, under various circumstances, recognized that a corporate officer can incur personal liability for either fraudulent misrepresentation or negligence. In holding a corporate officer liable for fraudulent misrepresentations or negligence, the court tends to focus on whether or not the officer CT Page 1374 himself committed the tort. See Kilduff v. Adams, Inc., 219 Conn. 314,331-32, 593 A.2d 478 (1991) (claim involving fraudulent misrepresentation made by an officer of a corporation where Supreme Court noted that "[i]t is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable"); Maturo v. Gerard, 196 Conn. 584, 588, 494 A.2d 1199
(1985) ("In considering the defendant's [agent's] personal liability for his [fraudulent] statements, it matters not that these representations were made by the defendant in the course of his agency relationship so long as the defendant can be said to have made them in circumstances under which he was chargeable with knowledge of their falsity"); see alsoAltieri v. Nanavati, 41 Conn. Sup. 317, 573 A.2d 359 (1989); Silber v.Carotenuto Sons; Superior Court, judicial district of New Haven at New Haven, Docket No. 416562 (February 8, 2000, Devlin, J.); Skelton v.Chemical Leaman Tank Lines, Superior Court, judicial district of New Haven at New Haven, Docket No. 359236 (May 13, 1996, Corradino, J.);Viola v. Benchmark Corp., Superior Court, judicial district of New Haven at New Haven, Docket No. 330299 (April 21, 1995, Hartmere, J.). Avitabilev. Criscuolo, Superior Court, judicial district of New Haven at New Haven, Docket No. 357059 (October 25, 1994, Hodgson, J.).
As to the plaintiff's claim of negligent misrepresentation, the court instructed the jury as follows: "[i]n order to prevail in his claim of negligent misrepresentation, the plaintiff, Thomas Lee, must establish the following elements by a preponderance of the evidence: 1) that the defendants made representations of fact to him which they knew or should have known in the exercise of reasonable care to be false; 2) that they knew or should have known that Mr. Lee would be guided by or would rely on those representations; 3) that Mr. Lee reasonably relied on the representations; and, 4) that he suffered a detriment or damages as a result of such reliance." (Plaintiff's Memorandum, p. 19.)
As evidenced by the responses to the "Special Interrogatories," as to the claim of negligent misrepresentation, the jury concluded that Mackey made untrue statements of fact to Lee to the effect that "as long as he [Lee] did his job he would have a job;" that "Mr. Lee could safely and freely tell Mr. Mackey his true thoughts and feelings about the business and its operations;" and that "Mr. Lee would have three to four months to get his feet under him."[2] The jury further found that Lee proved each of the elements of negligent misrepresentation by a preponderance of the evidence.[3]
There was sufficient evidence in the record to support the jury's conclusion that the statements in question were untrue statements of fact. There is no question that the statements were made and that they were statements of fact relating to matters of job security and CT Page 1375 conditions of employment. The jury simply concluded, under all the circumstances, including a mere seven full days of employment that Mackey did not mean what he said when he said it even though he knew Lee was hanging on his every word. Further, they reasonably and logically could have found that Mackey sought Lee out for employment; that Lee was fifty-seven years old and worried about job security in light of his age; that the Heitkamp employment was not Lee's ideal but was a relatively stable employment situation; that Mackey was a brand new owner of Axiom who admittedly had no real experience in the business in which it was engaged.
In responding as they did to specific interrogatories, the jury apparently rejected Mackey's characterization of the statements at issue as well as his claims that after a mere few days on the job he [Mackey] was in a position to judge that Lee was not capable of doing the job that Mackey hired him to do even though Lee had worked almost his entire career for Axiom s predecessor. The jury also did not accept Mackey's exaggerated claims that Lee was advocating or engaging in unsafe laboratory practices that jeopardized the safety and well-being of Axiom employees. In addition, based on Mackey's own testimony, it was reasonable for the jury to conclude that Mackey's expectations and professed "unrelenting passion for excellence" resulted in standards that were unreasonable and impossible for Lee to meet. Further, the jury also knew based on Mackey's own testimony that he solicited Lee's employment for the very reason of Lee's experience and credibility in the business. It was no small wonder that the jury found that the statements at issue were made in an effort to solidify Lee's acceptance of employment. Finally, the jury could have reasonably concluded that the real reason Mackey fired Lee when he did was because of cash flow issues created in no small part by questionable expenditures such as those for consultants on esoteric management issues rather than on any real issue with Lee's ability to do the job.
Giving the evidence the most favorable construction in support of the verdict as is possible, the jury could reasonably and Logically have concluded, based on the facts established and permissible inferences, that the plaintiff was entitled to prevail. The court having found that the verdict in favor of the plaintiff is well-justified by the evidence and the law, the defendant Mackey's motion for judgment notwithstanding the verdict is denied.
 II MOTION FOR A NEW TRIAL
In the alternative, Mackey moves for a new trial on the grounds that CT Page 1376 (a) the verdict was against the weight of the evidence; (b) the court erred in allowing the plaintiff's motion in limine to exclude evidence of his failure to file tax returns; (c) the court erred in denying the defendants' motion in limine and allowing evidence of emotional distress damages to be presented to the jury; (d) the court erred by allowing evidence, argument and a jury charge of reputation damage; and, (e) the court erred by denying the defendants' objections to the testimony of Mackey's ex-wife and their motion to strike such testimony.
"Any motion for a new trial is addressed to the sound discretion of the trial court and will not be granted except on substantial grounds." Burrv. Lichtenheim, 190 Conn. 351, 355, 460 A.2d 1290 (1983). "Litigants in a civil case have a constitutional right to have a question of fact decided by a jury." Beizer v. Goepfert, 28 Conn. App. 693, 703, 613 A.2d 1336
(1992), cert. denied, 224 Conn. 901, 615 A.2d 1044, cert. denied,507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
 A
Mackey argues that the jury's verdict cannot be sustained as it was against the weight of the evidence because there was overwhelming evidence that no false representations of fact occurred upon which Mackey knew or should have known that Lee would reasonably rely to change his economic position. For the reasons articulated in part I of this opinion, the court finds there was substantial evidence that the statements in question were made by Mackey and that the evidence amply satisfied all the elements of the claim of negligent misrepresentation by a preponderance of the evidence. There are therefore no substantial grounds to warrant a new trial on the defendant's claim that the verdict in favor of the plaintiff was against the weight of the evidence.
 B
Mackey next argues that the exclusion of evidence of Lee's failure to file income tax returns and nonpayment of income taxes from 1996 to the present was harmful error because the failure to file tax returns goes directly to the issues of reliability, veracity and credibility. Specifically, Mackey argues that this evidence was important to Lee's credibility since the jury disbelieved Lee on two other occasions, namely, "(1) that untrue statements were made regarding the amount of investments made in Axiom; and (2) that [Lee] was entitled to three weeks of vacation immediately." (Defendant's Memorandum, p. 23.) Lee argues, in response, that case law distinguishes between the failure to file tax returns and wilfully filing a false tax return and, therefore, the court properly excluded any evidence that Lee failed to file his tax returns. CT Page 1377
The court rejects the defendant's claim that Lee's credibility was otherwise at issue and finds that the evidence relating to Lee's failure to file tax returns was far more prejudicial than probative and agrees with the plaintiff that as to the issue of credibility, there is a distinction between filing a false tax return and failure to file at all. See Cree v. Hatcher, 969 F.2d 34, 38 (3rd Cir. 1992) (denial of motion in limine reversed on the grounds that failure to file a federal income tax return does not involve the making of a false statement and that such evidence was improper and unfairly prejudicial); United Statesv. Darwin, 757 F.2d 1193, 1202 (11th Cir. 1985) ("[t]here was no abuse [of discretion] where questions relating to . . . income tax returns were curtailed because of their limited relevancy").[4]
In this action, since the economic damages claimed were not yet subject to taxation, evidence that Lee failed to file timely tax returns would have gone solely to impeach his credibility. The court having justifiably determined that the evidence in question was not relevant or, in the alternative, that any probative value was greatly outweighed by the likely prejudice to the plaintiff and confusion of the issues, the motion for a new trial on this ground is also denied. See Code of Evidence §§ 4-1, 4-3.
 C
The balance of Mackey's motion for a new trial relates to various claims that he was somehow prejudiced by the limited admission of emotional distress and reputation evidence and related jury instructions even though the jury totally rejected the plaintiff's claim for damages for emotional distress. Since the jury declined to award any non-economic damages whatsoever, this argument is essentially a nonissue which the court respectfully declines to address. Further, the plaintiff sought to introduce the damage to reputation evidence in response to the defendant's claim that Lee failed to mitigate his damages. Since the jury found that the defendant failed to mitigate his damages to the extent of $10,000, it is apparent that they were able to distinguish between these issues and rejected his claim of emotional distress damages.
 III MOTION FOR REMITTITUR OR NEW TRIAL ON DAMAGES
In the alternative, Mackey moves for remittitur or a new trial on the grounds that the jury award was based upon sympathy, speculation and is inconsistent with its finding that Lee failed to mitigate his damages.
"When a verdict is excessive as a matter of law, the amount of the CT Page 1378 remittitur . . . rests largely within the discretion of the trial court." (Internal quotation marks omitted.) Morales v. Pentec, Inc.,57 Conn. App. 419, 435, 749 A.2d 47 (2000). As previously noted, "[a]ny motion for a new trial is addressed to the sound discretion of the trial court and will not be granted except on substantial grounds." Burr v.Lichtenheim, supra, 190 Conn. 355.
During the trial, the jury was presented with evidence that Lee was presently sixty years old and that he intended to work for as long as he was enjoying his work and that he thoroughly enjoyed his work. The calculation of his past and future economic damages adopted by the jury was based on the testimony of the plaintiff and the testimony and exhibits prepared by the plaintiff's expert witness, Sheldon Wishnick, an actuary, who testified that he used the age of sixty-five as the retirement age and recognized statistical sources for employees fitting Lee's profile to determine past and future losses.
Based on the special interrogatories, there is no question that the jury intended for Lee to be awarded economic damages in the amount of $310,000 minus $10,000, the extent to which they found he failed to mitigate damages, for a total award of $300,000. The jury was presented with two alternatives with respect to the plaintiff's losses, one being to award Lee damages based upon his prior employment at Heitkamp, as if he had never left its employ, and the other being to award damages based upon continuation of employment with Axiom. The jury opted to award the more conservative amount based on Lee's Heitkamp employment. This award was unquestionably based upon the testimony of the plaintiff and Wishnick and Plaintiff's Exhibit 31, a loss summary, presented by Wishnick, reduced by the amount the jury specifically determined related to the issue of mitigation on which the defendants had the burden of proof. The court finds that the jury award for past and future damages was limited to a reasonable time and was supported by the evidence. See Torosyan v.Boerhringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 33-34,662 A.2d 89 (1995).
Based upon all the evidence, there was a reasonable basis for the jury to award Lee total damages of $300,000. In awarding past and future economic damages, the jury made a conscious decision to put Lee in the same position he would have been in had he never taken the position at Axiom, no more and no less. The motion for remittitur and/or a new trial is therefore denied.
 CONCLUSION
Accordingly, the defendants, post-trial motions are denied. Judgment may enter for the plaintiff in accordance with the verdict. CT Page 1379
Peck, J.