[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I
 PROCEDURAL HISTORY
This is a civil case commenced by a two-count complaint filed with the court on January 23, 2001. The complaint alleges causes of action for common-law fraud and a violation of the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq. The plaintiff, Storts Welding Company, Inc., seeks compensatory damages, punitive damages and attorneys fees.
On January 30, 2001, the defendant, Richard Lether, d/b/a Utah Machine Tool Exchange of Salt Lake City, Utah filed a pro se appearance which states "special appearance — not general appearance contests jurisdiction." Thereafter, on January 30, 2001, the defendant filed with the court what purports to be an answer and special defenses. In this document, the defendant has failed to respond to the plaintiff's allegations as set forth in the complaint. The defendant did, however, allege as a special defense that the court lacks in personam jurisdiction over him because he is a resident of Utah and has never done business in the state of Connecticut.
The defendant through motion filed February 20, 2001, moved the court to dismiss the complaint for lack of jurisdiction. That motion was denied by the court, Levine, J., on July 30, 2001. Thereafter, through pleading filed February 23, 2001, the defendant sought leave to supplement his motion to dismiss. The court, Levine, J., denied this request. Finally, through pleading dated August 15, 2001, the defendant filed with the court a second answer wherein he responded to the factual allegations as set forth in the plaintiff's complaint. The case was claimed to the court trial list on May 20, 2002.
A pretrial was scheduled by the court for September 27, 2002. The CT Page 3267 defendant, through motion filed September 12, 2002, requested that the pretrial be rescheduled to an unspecified date. On September 18, 2002, the court, Wiese, J., denied the motion. On September 27, 2002, the court, Fischer, J., conducted a telephonic pretrial. During the course of the pretrial, the court informed the parties that a trial would go forward on November 5, 2002. The defendant thereafter moved the court for a postponement of the trial. The court, Fischer, J., denied that request.[1]
On November 5, 2002, the plaintiff appeared with counsel prepared to proceed with the trial. The defendant failed to appear. The court acting pursuant to Practice Book § 17-19 entered a default as against the defendant. The case then proceeded as a hearing in damages. The plaintiff presented the testimony of both expert and lay witnesses and introduced a number of exhibits. The court instructed plaintiff's counsel to file a post-trial memorandum of law. This order was complied with through plaintiff's memorandum filed January 14, 2003.
The defendant has not moved the court to set aside the default. The consequences that flow from the November 5, 2002 default for failure to appear for trial are the result of the defendant's own inactions over a lengthy period of time for which he is solely responsible. Accordingly, this court will proceed to determine the amount of damages.
 II DISCUSSION
A. Plaintiff's Claim for Compensatory Damages
From the credible evidence presented at trial, the court finds the following relevant facts. The plaintiff corporation is owned by John Connors. The nature of business conducted by the plaintiff's corporation is to provide metal welding services to its customers. In the year 2000, Connors sought to expand the company's business opportunities by performing its own metal bending operations. The metal bending is performed by a large machine known as a hydraulic press brake.
The defendant is in the business of selling used machinery. The defendant utilizes the internet to advertise the machinery it offers for sale to potential customers. (Plaintiff's Exhibit No. 4.) Connor responded to the defendant's internet advertisement for a used Pacific 150 ton hydraulic press brake, serial no. 1887. The parties negotiated the sale and purchase. (Plaintiff's Exhibit No. 1.)
During the negotiations, the defendant made numerous false CT Page 3268 representations concerning the machine's ability to perform the work for which it was designed. On April 15, 2000, the parties entered into a contract wherein the plaintiff agreed to pay $15,650 for the press brake specified. (Plaintiff's Exhibit No. 6.) The purchase price was paid to the defendant. The plaintiff contracted with Charles Baker Trucking Company to transport the brake press from the state of Utah, to its place of business in Meriden, Connecticut. The plaintiff paid $2,100 for the shipping and rigging service. (Plaintiff's Exhibit No. 2.)
When the press brake arrived at the plaintiff's place of business, it would not operate properly. Niel Peterson, a machine tool dealer with twenty-seven years of experience testified at trial. He offered his professional opinion that the machine would not operate because a number of its components and parts were either missing or not working. He opined that the costs to repair the machine would be between $35,000 and $45,000. Peterson indicated that the press brake in its present condition was scrap metal.
The plaintiff made numerous unsuccessful attempts to rectify the problem with the defendant. (Plaintiff's Exhibit No. 11.) Connors was initially unaware of the fact that the defendant had clandestinely stripped the machine of numerous essential parts. Further, the defendant falsified the identity of machine sold through the use of a pirated serial number. The defendant represented that the press brake had serial number 1887. (Plaintiff's Exhibit No. 7.) This was a fraudulent misrepresentation. A Pacific press brake with serial number 1887 is currently owned by Wakins, Inc., of Wichita, Kansas. (Plaintiff's Exhibit No. 10.)
A plaintiff who establishes tort liability is entitled to fair, just and reasonable compensation for his injuries. See Herb v. Kerr,190 Conn. 136, 139, 459 A.2d 521 (1983). "That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established." Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 420, 446 A.2d 799 (1982). "To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which affords a reasonable basis for measuring the [plaintiff's] loss. The [plaintiff has] the burden of proving the nature and extent of the loss . . . Mathematical exactitude in the proof of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier of fact to make a fair and reasonable estimate." (Citation omitted; internal quotation marks omitted.) WillowSprings Condominium Association, Inc. v. Seventh BRT Development Corp. ,245 Conn. 1, 58-59, 717 A.2d 77 (1998). CT Page 3269
The plaintiff claims damages for lost profits. "Damages for losses of profits are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." Humphrys v. Beach, 149 Conn. 14, 21, 175 A.2d 363 (1961). "[M]ere uncertainty as to the amount of lost profits may be dispelled by the same degree of proof as is required in other civil actions, that is, the amount may be determined approximately upon reasonable inferences and estimates." Burr v. Lichtenheim, 190 Conn. 351, 360, 460 A.2d 1290
(1983).
The "plaintiff cannot recover for the mere possibility of making a profit . . . A damage theory may be based on assumptions so long as the assumptions are reasonable in light of the record evidence." (Citation omitted; internal quotation marks omitted.) Beverly Hills Concepts, Inc.v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 70,717 A.2d 724 (1998). The burden is upon the plaintiff to "present sufficiently accurate and complete evidence for the trier of fact to be able to estimate those profits with reasonable certainty." Id.
The plaintiff seeks total compensatory damages in the amount of $250,000. This includes the $15,650 paid for the press brake and $2,100 paid for shipping and rigging costs. The balance of the damages sought represent the plaintiff's claim for lost profits. At the time of trial, Connors briefly testified that as a result of not having an operable machine, he lost one existing customer and the ability to generate new business opportunities. Connors described his claimed monetary loss in the following manner: "I would say probably, labor wise, over the two and a half years that I've owned the machine that it hasn't worked, I would say in excess of a couple hundred thousand dollars, without adding each and every particular job up. And in the welding business a lot of times one referral will get you another referral, which will get another account." (November 5, 2002, Transcript pp. 35-36.)
The court finds that the plaintiff has not sustained its burden of proving an entitlement to damages for lost profits. An award of damages cannot be based upon guess, conjecture or surmise. Based upon lack of evidence, the court is unable to make a fair and reasonable estimate of lost profits. The burden is upon the plaintiff to "present sufficiently accurate and complete evidence for the trier of fact to be able to estimate these profits with reasonable certainty." Beverly HillsConcepts, Inc. v. Schatz Schatz, Ribicoff Kotkin, supra,248 Conn. 70.
The court finds that the plaintiff has proven its entitlement to compensatory damages in the total amount of $17,750. CT Page 3270
B. Plaintiffs' Claim for Punitive Damages
The plaintiff seeks $750,000 in punitive damages pursuant to General Statutes § 42-110g (Plaintiff's January 14, 2003 Memorandum p. 74). General Statues § 42-110g (a) provides that in addition to an award of actual damages "the court may, in its discretion, award punitive damages . . ." The Supreme Court in the case of Gargano v. Heyman,203 Conn. 616, 525 A.2d 1343 (1987), has provided guidance to the trial courts in determining when it is appropriate to award punitive damages. The court stated in relevant part that "[a]warding punitive damages and attorneys fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done . . . In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." (Citations omitted; internal quotation marks omitted.) Id., 622. See also JacquesAll Trades Corp. v. Brown, 57 Conn. App. 189, 197-98 (2000).
Based upon the evidence presented, the court finds that the plaintiff has proven its entitlement to punitive damages. The intentional unscrupulous actions of the defendant justify an award of these extraordinary damages. Accordingly, the court in the exercise of its discretion awards the plaintiff $5,000 in punitive damages.
C. Attorneys Fees
The plaintiff seeks an award of attorneys fees. General Statutes §42-110g (d) provides in part that "the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys fees based on the work reasonably performed by an attorney and not the amount of recovery." In Hinchliffe v. AmericanMotors Corporation, 184 Conn. 607, 617-18, 440 A.2d 810 (1981), the court articulated the public policy fostered through the availability of attorneys fees stating: "The ability to recover . . . attorneys fees . . . enhances the private CUTPA remedy and serves to encourage private CUTPA litigation . . . The legislative history . . . demonstrates that CUTPA seeks to create a climate in which private litigants help to enforce the ban on unfair or deceptive trade practices or acts." Moreover, "[o]nce liability has been established under CUTPA, attorneys fees and costs may be awarded at the discretion of the court." Thames River Recycling, Inc.v. Gallo, 50 Conn. App. 767, 795, 720 A.2d 242 (1998). CT Page 3271
The clerk of the court is directed to schedule a date for a hearing on plaintiff's claim for attorneys fees. Plaintiff's counsel shall appear and present to the court contemporaneous time records. Counsel shall also be prepared to provide sworn testimony as deemed appropriate.
 III CONCLUSION
The plaintiff has sustained its burden of proving compensatory damages in the amount of $17,750, and punitive damages in the amount of $5,000. The court awards the plaintiff $22,750 in damages, plus costs. A ruling on the claim for attorneys fees will follow an evidentiary hearing on the issue.
 BY THE COURT Peter Emmett Wiese, Judge